Rich, Judge,
delivered the opinion of the court:
The question here is the patentability of a bit of military uniform accouterment known as a shoulder cord. We are told that it was ■created in response to a- need for some device which could be worn by all infantrymen, regardless of ability or experience by virtue of which various medals, badges and ribbons might be worn, for the purpose of improving and maintaining morale and espirit de corps.
The shoulder cord, which is a closed loop large enough to surround the shoulder, is described (with illustrations) in the Department of the Army’s Special Regulations No. 600-60-1 of 8 April 1953, pages 65 et seq. as follows:
6. Cord, shoulder (fig. 93).
(1) Description. — Shoulder cord of Infantry blue formed by a series of interlocking square knots around a center cord (1 of fig. 93).
<2) Sow worn. — On the outer garment (coat, jacket, or shirt) of the summer and winter uniform, passed under the arm and over the right shoulder under the shoulder loop and secured to the button of the loop ■ (2 of fig. 93).
Appellants, at the time of making the invention, were employees of the United States Government and assigned to what is now the Heraldic Branch, Office of Research and Engineering, Office of the Quartermaster General. The application and the invention have been assigned to the Government as represented by the Secretary of the Army.
The present application, Serial No. 324,157, was filed on the same ■day as an application for Design Patent, December 4,1952, and Patent No. Des. 170,453, issued on September 22, 1953, also to the Secretary of the Army. The design patent shows the same shoulder cord as Eig. 93 of the aforesaid SR 600-60-1 and contains as part of its specification the following:
The characteristic features of the design reside in the continuous endless loop composed of two major lengths of interlocking square knots joined at their upper ends by a plain cord and at their lower ends by a twisted cord, said cords being of lesser diameters than the diameters of the lengths of interlocking square knots, all as shown.
The functional purpose of the section of plain cord joining the upper ends is to go under the shoulder loop of the uniform without making a bulge and, similarly, the lesser diameter twisted cord joining the lower ends is to reduce chafing of the uniform under the sleeve. The appealed claims read (emphasis ours):
13. A shoulder cord for a uniform coat or the like which includes, shoulder straps or the like, comprising a relatively short and slender top portion normally disposed beneath said shoulder strap and concealed thereby, relatively long and bulky ornamental front and rear portions depending from opposite ends *746 of said top portion, and a relatively; flat .underarm portion connecting the. lowei-ends of said front and rear portions together. .. .
18. The structure of claim 13, wherein said top portion includes méans foi-securing said cord to said coat.
These claims stand rejected on the ground of “double patenting’7 because of the issuance to appellants of their design patent," Des. 170,453, no other reference being relied on. Since there are no other-grounds of rejection, the sole question to be decided is whether allowance of the appealed claims would result in “double patenting.” Of the many possible aspects of this legal problem the only one here involved is that raised by the decision of the Board of Appeals that “only one invention is present” and therefore two patents cannot issue. In extenso, the board, in an ppinion on a petition for reconsideration, expressed itself as follows:
In our decision we found only one invention to be disclosed in appellants’ design patent Des. 64,352 [sic. This number is that of the patent in a cited case the board was considering. The correct number is 170,453] and in the instant mechanical application of the same appellants, and we therefore held that since only one patent can issue on one invention and since the design patent had issued that this application cannot become a patent regardless of the claims hereof and regardless of any disclaimer filed by appellants. * * * we- still are of the opinion that only one invention exists in the said design patent and in this mechanical application. We are of the opinion that our decision of April 16, 1957, is sound and that any deviation therefrom would not be warranted. (Emphasis ours.)
In explanation of the reference to disclaimer it should be mentioned that appellants, subsequent to final rejection, filed a terminal disclaimer, under 35 U.S.C. 253, as to that portion of the term of any patent they might obtain on the appealed application extending beyond the term of their issued 14 year design patent. This effectively removed from the case any issue of extension of the monopoly secured by the design patent, another aspect of “double patenting.” Nevertheless, under In re Siu, 42 CCPA 864, 222 F. 2d 267, 105 USPQ 428, removal by disclaimer of the extension of monopoly issue did not dispose of the ground of rejection relied on by the board, namely, that there could not be two patents because there is present here only one invention. See Amdur, Patent Law and Practice, pages 311-313 and cases there cited.
The board appears to have predicated its decision on three cases decided by this court, In re Hargraves, 19 CCPA 784, 53 F. 2d 900, 11 USPQ 240; In re Barber, 23 CCPA 834, 81 F. 2d 231, 28 USPQ 187; and In re Phelan, 40 CCPA 1023, 205 F. 2d 183, 98 USPQ 156.
*747 The principle applied in each, of those cases is that double patenting is a proper ground of rejection if the features producing the novel aesthetic effect of a design patent of application are the same as those recited in the claims of a mechanical patent or application as producing a novel structure.. That principle, however, doe's not -necessarily preclude the allowance of design and mechanical patents based on identical disclosures, nor the allowance, of claims in the mechanical patent dominating the design patent. If the design includes ornamental features which go beyond and are patentable over the strum tural features as defined in the claims of the mechanical application, the inventor is entitled to two patents.
Appealed claim 13 is directed to the concept of a shoulder cord having long and bulky ornamental front and rear portions joined by a short slender top portion adapted to fit under a shoulder strap and by a flat underarm bottom portion. Claim 18 adds to that combination a means for securing the cord to the coat.
It seems evident that the shoulder cord as thus claimed may have a wide variety of appearances, and not necessarily the appearance of. the design of the reference. The front and rear portions, which are the most conspicuous parts of the strap, may have any shape desired, so long as they are “relatively long and bulky” and “ornamental.” They might, for example, be smooth, braided or woven and they might be of uniform size, tapered, or composed of alternate large and smaller sections. Further, the front and back portions might be identical or might differ in a variety of ways. The top and bottom portions might be similarly modified so long as the former was short and slender and the latter relatively flat.
The single design patent claim is, of course, in the formal terms required by Patent Office Hule 153:
The ornamental design for a shoulder cord, substantially as shown and described.
Only one such cord is shown in the drawing and we have quoted above the description of it in the specification. The Patent Office brief correctly says that it would be error to contend that this claim is limited to the particular cord shown in the design patent because 35 U.S.C. 289 says that a design patent is infringed by a “colorable imitation” of the. patented design and then attempts to show that the appealed claims 13 and 18 cover no more than such colorable imitations.
It has long been settled, in the law as to infringement of design patents, what it is that constitutes a colorable imitation. It is neces *748 sary to go no further than the case principally relied on by the Patent Office, Nebel Knitting Co., Inc. v. Sanson Hosiery Mills, Inc., 214 F. 2d 781, 102 USPQ 142 (CA-4), but it might also be well to bear in mind that “colorable” is defined in the dictionary as “2. Seemingly valid or genuine; plausible; also, feigned; counterfeit.” The Nebel case applied the test of infringement laid down many years ago by the Supreme Court in Gorham Company v. White, 14 Wall. (81 U.S.) 511:
* * * if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.
We think it clear that appellant’s design patent, interpreted in accordance with the foregoing, is drawn to an inventive concept distinct from that defined by the appealed claims and, therefore, there was more than one invention. While the ornamental design embodies the proportioning of front, rear, top and bottom portions broadly set forth in those claims, it also includes as characteristic features, front and rear portions which are knotted in a particular manner, a smooth upper portion and a twisted lower portion. None of those features are called for or even remotely suggested by the appealed claims and, in our opinion, they combine to produce a unitary article of pleasing over-all appearance and constituting an ornamental design invention patentably distinct from the utilitarian or structural concept defined in the appealed claims. The latter are, therefore, allowable.
The decision- of the Board of Appeals is reversed.