**REEVES BROTHERS, INC., Plaintiff-Appellant and Cross-Appellee,**

v.

**U. S. LAMINATING CORP. and Travis Rauch, Defendants-Appellees and Cross-Appellants.**

**Nos. 1, 2, 3, Dockets 32440, 32441, 32442.**

United States Court of Appeals Second Circuit.

Argued Sept. 18, 1969.

Decided Nov. 5, 1969.

S. Leslie Misrock, New York City (Pennie, Edmonds, Morton, Taylor & Adams, New York City, Jonathan A. Marshall, New York City, on the brief), for plaintiff-appellant and cross-appellee.

Stanley H. Cohen (Caesar, Rivise, Bernstein & Cohen, Philadelphia, Pa., A. D. Caesar, Philadelphia, Pa., on the brief, Irving Moldauer, New York City), for defendants-appellees and cross-appellants.

Before LUMBARD, Chief Judge, WATERMAN and KAUFMAN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

While this suit for infringement raises the usual host of issues and sub-issues common to all patent cases, the basic controversy is over the obviousness, and thus the validity, of the underlying patent. Since Judge Bartels' careful and extensive opinion [1] deals at some length with the factual underpinnings, we shall try to avoid repetition, except where necessary to clarify our reasons for agreeing with his holding that the patent was invalid for obviousness under 35 U.S.C. § 103 (1964.)

Reeves Brothers, Inc. ("Reeves"), assignee of the original patentee, sued U. S. Laminating and its owner, Travis Rauch ("U. S. Laminating") for infringement. At issue was a patent on a process for attaching polyurethane foam to fabric by use of heat (No. 2,957,793), a second patent improving the laminating apparatus (No. 3,057,766), and a reissue of the second patent correcting some errors in description (No. Re. 25,493). U. S. Laminating interposed a variety of defenses in a fashion the District Court characterized as "shotgun." Because of the conclusions we have reached, we need pass only on the question of obviousness.

In March, 1956, Curtiss-Wright Corporation employed John W. Dickey, a chemical engineer, to find some way to attach polyurethane foam to carpeting, so that it might be used as an underlay. Although he was advised that heating the foam was impractical and would decompose when heated to a temperature sufficient to fuse, towards the end of March he passed a piece of polyurethane foam through a Bunsen burner, and then pressed it to a piece of fabric. He discovered that the foam would adhere without damaging the fabric, or decomposing the polyurethane. The first patent involved little more than an arrangement of rollers and a burner on a flat bed conveyer, that heated the foam and pressed it to the fabric while it was still tacky. Dickey applied for a patent on September 28, 1956. After five rejections by the patent office, Dickey obtained a patent on August 16, 1960, on a process, which in substance claimed that the polyurethane, after being heated to at least 450° F., and cooled below its normal freezing point while still remaining tacky, could be pressed against the fabric (laminated) without damaging it.

While the original apparatus was satisfactory for laminating polyurethane to carpets, it tended to wrinkle when applied to fabrics suitable for use in garments. Accordingly, Dickey devised an arrangement of rollers that would tension the foam before lamination, ending the problem of wrinkles. In addition, the second patent indicated that the material to which the foam was to be bonded could be pre-heated, thus increasing its adhesion to the foam. He applied for a patent in September, 1957, and after four rejections succeeded in having an amended application accepted on January 11, 1962. In January, 1963 Dickey applied for a Reissue of the second patent, primarily directed at correcting inartful language in the original. This was granted on December 10, 1963.

■ The tests for obviousness were described in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966):

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or

1. 282 F.Supp. 118 (S.D.N.Y.1969).

nonobviousness of the subject matter is determined." 383 U.S. at 17, 86 S. Ct. at 694.

The District Court relied both on pre-existing patents and expert testimony to conclude that flame lamination of polyurethane foam was amply foreshadowed in the prior art.[2] Relying heavily on expert testimony introduced by both Reeves and U. S. Laminating, Judge Bartels determined that it was well known to those skilled in the art that thermoplastic materials would assume a supercooled state (remain fluid below their normal freezing point) if cooled rapidly. Furthermore, while plaintiff's expert preferred to describe polyurethane foam as "thermosetting" (taking a different chemical form after fusing), testimony established that it was thought in 1956 to have thermoplastic properties, and was indeed described as such in the Dickey patent application. Thus a person skilled in the art[3] would have expected polyurethane foam to have acted in a manner at least somewhat similar to other thermoplastics, and the content of the prior art with respect to bonding thermoplastic materials generally, as well as polyurethane foam specifically, would have to be considered in evaluating the obviousness of the first Dickey patent.

■■ Prior patents pointed the way to the Dickey flame lamination process. In particular, the Abbott patent, No. 2,-398,398 (April 16, 1946) and the Snyder patent, No. 2,293,568 (August 18, 1942), discussed the use of flame heating to laminate thermoplastic films to cloth and other substances. Films and foams may not be identical, as Reeves suggests, but they can hardly be thought to be so different that one working with foam would feel compelled to ignore what had been done with film. More to the point, the Hacklander patent, No. 2,878,153 (March 17, 1959, but pending at the time of Dickey's application[4]), involved a process for spot welding one piece of polyurethane foam to another by use of heat. A German gebrauchsmuster patent[5] of January, 1955, discussed direct bonding of polyurethane foam material to fabric or another piece of foam. Dr. Christopher Wilson, who testified as U. S. Laminating's expert, also received patent No. 3,170,832 (February 23, 1965, filed July 8, 1954), which involved heat and adhesive lamination of thermoplastic film to polyurethane foam.

■ We are mindful of the dangers of indiscriminate random selection from prior art to support a finding of obviousness. See C-Thru Products, Inc. v. Uniflex, Inc., 262 F.Supp. 213, 219 (S.D.N.Y. 1966). However, here the patents considered were directed to laminating thermoplastic materials, the area with which Judge Bartels found a man skilled in the pertinent art would be familiar. In addition, there was competent testimony by defendant's expert, Wilson, that the thermoplastic properties of polyurethane foam were known as early as 1954, as well as the introduction of specific patents (Snyder and Abbott) involving flame lamination of thermoplastics. Having thus determined the scope and content of the prior art, as well as the level of ordinary skill (see note 3, *supra*), the Dis-

---

2. *Id.* at 137–138.

3. The District Court, on the basis of expert testimony, appropriately defined one with "ordinary skill in the pertinent art" as:

    " * * * a person with a scientific or engineering background and a practical knowledge of the chemical and physical properties of plastics including plastic lamination processes and some elementary knowledge of thermodynamics and heat transfer principles. * * * [H]e would be expected to understand the operations of various

machines employed for lamination * * *." *Id.* at 134

4. Patents pending at the time of application are relevant prior art. Hazeltine Research, Inc. v. Brenner, 382 U.S. 252, 86 S.Ct. 335, 15 L.Ed.2d 304 (1965).

5. A "gebrauchsmuster" patent is a German grant of exclusive use, similar to an American patent, but without a novelty search, and with a shorter period of effectiveness. We agree with the District Court that claims of such patents may be used in evaluating the state of the prior art under 35 U.S.C. § 103.

trict Court was justified in concluding that the difference between the Dickey patent and the prior art was insufficient to support a finding of nonobviousness. While there is a presumption of patent validity, 35 U.S.C. § 282, that presumption means no more than that reasonable doubts will be resolved in favor of the patentee. See Lorenz v. F. W. Woolworth Co., 305 F.2d 102 (2d Cir. 1962). See also Graham v. John Deere Co., 383 U.S. 1, 18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Courts have also recognized that failure of the Patent Office to consider certain relevant prior patents severely undercuts the presumption. Here, the file wrapper discloses no mention of the Hacklander or the German gebrauchsmuster patents discussed above. See, e. g., Formal Fashions, Inc. v. Braiman Bows, Inc., 369 F.2d 536 (2d Cir. 1966); Crane Packing Co. v. Spitfire Tool & Mach. Co., 276 F.2d 271 (7th Cir.), 363 U.S. 820, 80 S.Ct. 1259, 4 L.Ed.2d 1517 (1960).

██ While the evidence is impressive that a discovery such as Dickey's was implicit in the prior art and sufficient to support a finding of obviousness in its own right, the District Court also relied on Austrian and Belgian patents to show simultaneous invention. Simultaneous invention is not, like anticipation, a preclusive finding; rather, like commercial success it is a sub-test of obviousness that may be persuasive without necessarily being conclusive. See Wilson Athletic Goods Mfg. Co. v. Kennedy Sport Goods Mfg. Co., 233 F.2d 280 (2d Cir. 1956); Ruben Condenser Co. v. Aerovox Corp., 77 F.2d 266, 268 (2d Cir. 1935). See also Audio Devices, Inc. v. Armour Research Foundation, 293 F.2d 102, 107 (2d Cir. 1961). The Austrian Patent, No. 188,906 (March 25, 1967, filed October 25, 1954) involved use of hot gas to heat the surface of polyurethane foam to fusion, before press-

ing it to a fabric. Reeves claims that neither a flame nor a temperature of 450° F. are indicated; but Dickey's patent itself speaks of a "heating means" in generic terms, and also of raising the foam to its fusion point—precisely what is done in the Austrian patent. The Belgian Patent, No. 549,826 (July 31, 1956, filed July 5, 1956) suggests the use of "heating means" to make the polyurethane foam "sticky" before being pressed to a fabric. While Reeves complains that it had no opportunity to cross-examine on the issue of the filing date of each of these patents, in the case of the Belgian patent the difference in time is immaterial. In any event, Reeves shows no prejudice arising from use of the filing date, which unless inaccurate in some respect would obviously be more relevant to the issue of simultaneous invention than the date of issue of the patent.[6]

The second and reissue patents present significantly less difficulty. Considered together, their primary contribution was in preheating the materials before lamination, and altering the position of rollers to eliminate the problem of wrinkling. We can easily dispose of the preheating claim. Dr. Wilson, defendant's expert, testified that preheating was a common method to improve adhesion in laminating processes; the Snyder patent, No. 2,293,568 (Aug. 18, 1942) disclosed preheating the surface to which a film was to be bonded.

The Yanulis patent, No. 2,944,586 (July 12, 1960, filed Apr. 20, 1956), although involving an extrusion process, clearly advised that the material to which the plastic is attached should be preheated "to improve adhesion." When combined with Dr. Wilson's testimony, there can be little doubt that one skilled in the art would have regarded such a modification as routine and obvious.

Using tension to remove wrinkles was hardly a new step in the field of lam-

6. Plaintiff includes a decision of the German Bundespatentgericht on Dec. 8, 1968, to support its argument that the Dickey invention is patentable over the gebrauchsmuster and Hacklander patents. Without deciding that introduction of such authority at this time is proper, see F.R.Civ.P. Rule 44.1, we note that the ground of our decision—obviousness—was not considered by the German court.

inates. The Mallory patent, No. 2,351,-350 (June 13, 1944) suggested stretching or tensioning of rubber hydrochloride film to remove wrinkles caused in the process of laminating. While the Snyder patent, discussed above, does not specifically disclose the use of tension to remove wrinkles, the apparatus is remarkably similar to Dickey's, and involves the use of rollers to create tension during a heat lamination of film to fabric. In sum, we agree with the able trial judge that the second and reissue Dickey patents must also be found void for obviousness.

We have considered plaintiff's other arguments carefully, and find no merit in them. Moreover, we are not inclined to disturb the District Court's disposition of trial costs. The determination is within the trial court's sound discretion, especially where it believes that a party such as U. S. Laminating has consumed needless time and effort in trying frivolous "shotgun" claims. See Prudence-Bonds Corp. v. Prudence Realization Corp., 174 F.2d 288 (2d Cir. 1949).