57 CCPA

**Application of Luke THORINGTON, Gerald Schiazzano and Joel Shurgan.**

**Patent Appeal No. 8188.**

United States Court of Customs and Patent Appeals.

Nov. 26, 1969.

** This computation is that presented by defendant at fn. 4, page 9, of its brief filed May 19, 1969.

Gordon D. Coplein, New York City, attorney of record, for appellants.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, McGUIRE, Judge, sitting by designation, and ALMOND, BALDWIN and LANE, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the examiner's rejection of claims 1, 6, 7, 9, 15, 24, 26, 27 and 28 [1] in appellants' application [2] on the ground of double patenting. One claim has been indicated to be allowable.

The invention relates to a noncircular cross-section fluorescent lamp tube and resides particularly in providing the usual generally cylindrical envelope of a fluorescent lamp with one or more grooves or deformations which are rotated around and along the envelope's longitudinal axis in a curved path of finite radius. In the preferred embodiment of the invention, shown in Fig. 1 below, the curved path is a helix which

---

[1]. It is appellants' view that claims 2, 5, 10, 14 and 19 are also before us for consideration. Their uncertain status arises due to their inclusion in the Final Rejection in rejections based on undue multiplicity and on double patenting. In response, appellants elected claims, not including claims 2, 5, 10, 14 and 19, for further prosecution. The Examiner's Answer then only repeated the rejection of these claims based on undue multiplicity. On appeal, appellants withdrew a substantial number of claims and the board reversed the examiner's holding of undue multiplicity, stating that "no further issue as to claims 2, 5, 10, 14 and 19 is before us." We agree with the solicitor that the Final Rejection was later modified by the Examiner's Answer to exclude claims 2, 5, 10, 14 and 19 from the double patenting rejections and therefore there is no issue as to those claims before this court.

[2]. Serial No. 441,411 filed March 11, 1965, for "Continuous Non-Circular Cross-Section Lamp."

is continuous and extends substantially along and around the entire length of the envelope for more than one full turn of a helix.

Fig. 1.

[A579]

The specification points out that the invention may be utilized with various types of fluorescent lamps having different radiating materials, tube materials, starting gases, phosphors and types of electrodes, and notes that types of phosphor coatings and electron emissive filament-cathodes are well known. The lamps of the present invention are said to possess several significant electrical operating advantages as well as several mechanical advantages, not the least of which is increased radiation efficiency due to the increase of arc stream length because the arc discharge will follow a helicoidal path which when stretched out is longer than the physical length of the envelope itself, resulting in increased lamp voltage gradient.

Claims 1 and 9 are reproduced as being illustrative:

1. An electric discharge lamp comprising an elongated envelope of generally tubular shape, electrode means mounted within said envelope and an ionizable medium contained therein for producing an arc stream when an electric potential is applied across said electrode means, said envelope being formed with two indentations therein, said indentations being spaced from each other and formed along said envelope in separate helical paths around and along the envelope longitudinal axis, each of said indentations being continuous and extending along the major portion of said envelope in its corresponding helical path.

9. A low pressure electric discharge lamp comprising an elongated, generally straight envelope of vitreous material of generally tubular shape, an ionizable medium within said envelope comprising an inert starting gas and a quantity of mercury and a pair of electrodes at opposite ends of said envelope to establish an arc stream discharge therebetween, the outer wall of said envelope having at least one deformation therein to produce a non-circular envelope cross-section in a plane generally transverse to the envelope longitudinal axis where a said deformation exists, a said deformation and the non-circular cross-section produced thereby being rotated on a path described by a helix around and along the longitudinal axis for more than one full turn of the corresponding helical path to thereby rotate said non-circular cross-section in a corresponding manner, at least a portion of the arc stream tending to travel the helical path of the non-circular cross-section.

While the claims differ in the language used to describe the tube configuration, claims 6 and 7 are similar to claim 9 in other respects. Claim 15 is also similar to claim 9 except that the "ionizable medium" is not specified as including inert starting gas and a quantity of mercury. Claims 24 and 26

additionally call for a phosphor, and claims 27 and 28, dependent from claim 26, respectively recite that the cross-section is symmetric and asymmetric.

The double-patenting rejections, as characterized by the examiner and board, are essentially as follows:

1. Claims 1, 6, 7, 9, 15, 24 and 26 to 28 stand rejected under 35 U.S.C. § 101 as not patentably distinguishable from the claimed subject matter of appellants' design patent, more particularly claims 1, 15, 24 and 26 to 28 are rejected as patentably indistinguishable from the claim of the design patent while claims 6, 7 and 9 are rejected over the claim of the design patent in view of the disclosure of Lemmers.

2. Claims 7, 9, 24 and 26 to 28 are rejected for double patenting over the claims of the commonly-assigned Olsen patent in view of the disclosure of Ewest.

The references relied on are:

| Thorington et al. | | |
|---|---|---|
| (Thorington) | De. 198,268 | May 26, 1964 |
| Ewest | 2,009,223 | July 23, 1935 |
| Lemmers et al. | | |
| (Lemmers) | 2,950,410 | August 23, 1960 |
| Olsen | 3,169,657 | February 16, 1965 |

Thorington discloses the ornamental design for a fluorescent lamp, as shown thusly:

FIG. 1

FIG. 2       FIG. 3

[A580]

Ewest shows an early, conventional type of fluorescent lamp having a cylindrical envelope, inert starting gas, a quantity of mercury and electrodes.

Lemmers discloses a low pressure discharge fluorescent lamp whose ionizable atmosphere includes an inert starting gas or mixture of gases. The reference also shows a plurality of spaced indentations or "dimples" formed along straight lines parallel to the lamp's longitudinal axis resulting in an elongated tubular envelope of noncircular grooved cross-section. The "dimples" are staggered to produce a sinuous path for the arc stream.

Olsen discloses a machine for converting glass tubes of a type such as the enclosure for a fluorescent lamp into

helicoidal formation and the tubes so formed. The subject matter of Olsen in question is Fig. 6 and claims 11 through 15.

# FIG. 6

[A581]

Claim 12 of Olsen is illustrative and reads as follows:

12. An enclosure comprising a single thin walled glass tube having two helical grooves formed in its wall, each of said grooves being circumferentially spaced and comprising disconnected sections respectively lying on and longitudinally spaced along the same helix.

The board affirmed the double patenting rejections summarized above, finding first that:

Appellants' departure is that appellants' envelope instead of being a straight cylindrical tube as in Ewest or of a known non-circular cross-section that defines an elongated electron discharge path, as in Lemmers et al., takes the form of a straight tube having one or more helical indentations extending substantially the length of the envelope or at least of more than one turn of a helix.

Its rationale was explained thusly:

In our view, the granting of a second patent on the single feature of novelty of providing helical indentation in an otherwise conventional fluorescent lamp would constitute an unreasonable extension of the monopoly secured by appellants' design patent.

That there would be an extension of the monopoly is clear since anyone wishing to make a fluorescent lamp by conventional techniques after the expiration of the design patent would still be confronted by the instant claims in a mechanical patent, so that the invention depicted in the design patent would still be unavailable to the public for many years thereafter, notwithstanding the expiration of the term of the design patent.

That this extension of the monopoly would be unreasonable is likewise clear for the filing of two patent applications was not the result of some administrative circumstance but manifestly was an effort by appellants to secure greater patent protection with two patents than either patent alone would give. The direct result of issuing two patents for the single inventive concept would be to circumvent the statutory limitation to a 14 year term for a designed patent and a 17 year term for a so-called "mechanical" patent.

The board's factual inquiry is also set out:

We find that the inventive concepts of the design patent and the double

helical embodiment of the instant application are the same. Notwithstanding appellants' argument that their design patent was granted solely on the outer appearance of their lamp envelope, apart from its structure and function, 35 U.S.C. 171 authorizes the granting of a design patent on the *article of manufacture,* not just on *appearance.* In the instant case the article of manufacture is a "fluorescent lamp", whatever connotation that term may have had at the time appellants invented the design thereon, not just the envelope or the "appearance" of one.

The term "fluorescent lamp" at the time appellants filed applications for the instant "mechanical" and their design patents had acquired a well understood meaning both in the dictionary and in the patent art, as the Examiner pointed out in his Answer, and such a lamp contemplated the various features of electrodes, ionizable gas and fluorescent coatings on the envelope which appellants here contend are the distinguishing features of the lamp of the instant application over those of the design patent. Furthermore the Lemmers et al. patent describes how noncircular cross sections of the envelope lengthen the discharge path within the lamp and the result in an increased efficiency so that appellants' improvement thereover would be merely a different shape for this extended path that apparently will give only the same increased efficiency found therefor by Lemmers et al. Appellants have not called our attention to any comparative test data wherein appellants' configuration of the envelope attains an improved efficiency over the configuration devised by Lemmers et al. On the contrary Lemmers et al. recognized or necessarily provided six of the seven advantages urged by appellants * * * and the seventh advantage * * * of a symmetrical appearance for different orientations of appellants' lamp finds full response in the design patent already granted appellants wherein this difference in appearance is of the essence.

Additionally, the board affirmed the rejection based on Olsen, finding that it would have been obvious to fabricate the envelope or enclosure, as defined in claims 11 to 15 of Olsen, into a fluorescent lamp having the usual internal components, as disclosed by Ewest. That the helices of Olsen are discontinuous was acknowledged; however the board felt that "it does not appear from the record before us that either the continuous or the interrupted forms for the helices offer any significant difference in function."

Appellants' petition for reconsideration requesting modification of the board's decision was denied. Subsequent to this, appellants' assignee filed a terminal disclaimer [3] as to the part of the term of any patent issued on the appealed application extending beyond the expiration date of the issued design patent.

■ Prior to treating in detail appellants' arguments attacking the soundness of the board's decision, we consider their request that this court, depending upon the relief granted appellants on the merits, either remand the application to the Patent Office with instructions to expunge the terminal disclaimer from the record or disregard it, or that the terminal disclaimer be favorably considered on the merits. Although appellants filed, after the Examiner's Answer but before the board's decision, a letter "reserv[ing] the right to disclaim," we do not perceive any special circumstances which would cause us to depart from our views expressed in In re Heyl, 54 CCPA 1608, 379 F.2d 1018, and In re Aldrich, 55 CCPA 1431, 398 F.2d 855, where we sustained the Patent Office's refusal to consider, as untimely, terminal disclaimers filed *prior* to the

3. Actually, two terminal disclaimers were filed for reasons which are unnecessary to mention here. We will refer to the two as one.

board's decisions on reconsideration. Here appellants filed their disclaimer *after* the board's decision on reconsideration. We, therefore, decide this case on the basis that there is no terminal disclaimer for our consideration.

Appellants set forth several reasons in support of their contention that the board erred. Summarized briefly, the pertinent points are:

1. There can be no holding of double patenting in a design patent-utility patent situation because of the differences in:

    (a) the statutory origin (35 USC 101 vs. 35 USC 171);

    (b) the subject matter protected (utility vs. ornamentality by legal monopoly;

    (c) the tests for infringement.

2. The design patent and the claims on appeal are directed to different inventions since the design patent fails to show the claimed elements of an electrode, a phosphor coating, an ionizable medium, a quantity of gas and an envelope of vitreous material.

3. There will be no extension of monopoly since the design covered by the design patent can be employed without infringing the claims on appeal.

4. The Olsen patent and the subject application are for different inventions when one compares the invention defined by the respective claims.

The solicitor's brief, in the main, reiterates the positions of the examiner and board without amplifying the reasons for the rejections.

■■■ We shall treat appellants' arguments in the order presented above, setting them out in detail as we comment thereon. First, however, we provide some general observations regarding the area of double patenting. It should now appear clear from this court's recent decisions [4] in this area that double patenting rejections usually take one or both of two forms, namely, the "same invention" type "double patenting" identifiable with the statutory provision 35 U.S.C. § 101, saying that an inventor may obtain *a* patent, interpreted as meaning only one patent; and the "obviousness" type "double patenting," a judicially-created doctrine grounded in public policy rather than statute and primarily intended to prevent prolongation of monopoly by prohibiting claims in a second patent not patentably distinguishing from claims of a first patent. This court has held that a terminal disclaimer is ineffective where it is attempted to twice claim the same invention; however, an "obviousness" type "double patenting" rejection may be obviated by a terminal disclaimer.

Appellants contend that there can be no double patenting in a design patent-utility patent situation because of the different statutory bases on which design and utility patents are predicated, namely, 35 U.S.C. § 101 for utility patents and 35 U.S.C. § 171 for design patents.[5] These separate provisions, it is urged, result in differences in subject matter, criteria of patentability and scope of protection in that 35 U.S.C. § 101 requires usefulness or utility as a

---

4. Extensive citation will not be undertaken, but see In re White, 56 CCPA 870, 405 F.2d 904 (1969).

5. The statutory provisions read:
    § 101. Inventions patentable
      Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

    § 171. Patents for designs
      Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

      The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided.

prerequisite to patentability, while the key word in 35 U.S.C. § 171 is "ornamental." The design patent, appellants argue, protects only the visible, ornamental features of the article, its distinctive appearance as shown in the patent drawings, and cannot be predicated on nor protect function, whereas a utility patent defines by its claims a utilitarian article including the operating functions and elements hidden from view. Accordingly, they urge, the tests for infringement differ for the two also. In brief, they thus view the holding of double patenting in the instant situation as not authorized by statute. Appellants rely principally on language in the case of Gross v. Norris, 18 F.2d 418 (4th Cir. 1927),[6] stating:

> But it is difficult to understand how a situation of double patenting can arise in the case of a design and of a mechanical patent applicable to the same device, notwithstanding certain statements in the books to the contrary. * * * There may be double patenting when two patents for the same mechanical structure are sought, * * * and when two patents for the same design are applied for * * *. But a design patent and a mechanical patent relate to different subject matter. The first pertains to the appearance while the second relates to the mechanical structure of a device, and it is well settled that a design and a mechanical patent covering the same article of manufacture, may coexist. * * *

> It is true that a design patent cannot be used to protect a mechanical function, or to cover an article whose configuration affects its utility alone, and whose appearance is a matter of no consequence. * * * Yet, if an attempt is made to cover such a structure by both kinds of patents, double

patenting does not result, for the reason that the design patent is invalid. * * * [Citations omitted.]

Appellants acknowledge, however, that the view expressed in that case has not been universally followed.

While the question of rejecting claims of a utility application for double patenting in view of a design patent is an unusual one, it is not one of first impression in this court.[7] In In re Hargraves, 19 CCPA 784, 53 F.2d 900, 11 USPQ 240, appellant's design patents recited a design for "resilient tires" and displayed, in substance, the identical design shown by the drawings and fairly set out in the claims of the utility application on appeal. This court observed:

> While it is true, as a matter of law, that one may have a mechanical patent and a design patent upon the same subject-matter, there must be a clear patentable distinction between the two inventive ideas involved. * * *

> * * * * * *

> If the two Hargraves design patents, or if either of them, would anticipate the application here, then to issue the mechanical patent asked for now would result in a double patenting to the appellant, which would be clearly contrary to law. The power to create a monopoly, in such cases, is exhausted by the first patent.

The court then found that the same inventions were involved and that granting a utility patent would be simply to further extend the appellant's monopoly. It further observed:

> Finally, appellant presents this novel proposition: That his design patents are void as being upon an unpatentable subject-matter, namely, tire treads, and that therefore he stands as one having no pre-existing patent, and should be given a patent upon his mechanical device. Upon the invalid-

---

6. The appellate court reversed the lower court on the question of whether the design patent met the "standard of invention," but did not disapprove the language quoted. Gross v. Norris, 26 F.2d 898 (4th Cir. 1928).

7. The conflicting theories and cases on this point are analyzed in a thorough review by Megley, Design and Mechanical Patents Relating to the Same Subject Matter, J. Pat. Off. Soc., Vol. XLIV, p. 309, May 1962.

ity of his design patents he cites several cases where courts have held design patents upon tire treads to be void. [Citations omitted.]

We are of opinion that the question of the validity of appellant's prior design patents can not be raised by him in this proceeding. Waiving the question of the possible estoppel of the appellant to question his own patents, it seems quite evident that it is not the function of this court to determine whether appellant's former patents were illegally granted. That may be done in another court, as provided by law. The patents themselves furnish *prima facie* proof of their validity.

Similarly, the decisions in In re Barber, 23 CCPA 834, 81 F.2d 231; In re Phelan, 40 CCPA 1023, 205 F.2d 183, and In re Dubois, 46 CCPA 744, 262 F.2d 88, accept the principle that double patenting is a proper ground of rejection if the features producing the novel aesthetic effect of a design patent or application are the same as those recited in the claims of a utility patent or application as producing a novel structure.

■ Viewing these cases with the perspective gained from this court's recent decisions in the area of double patenting and in the light of the relevant statutory provisions, as we must, it seems clear to us that double patenting rejections in a design-utility situation cannot be predicated on any statutory provision, but rather only on judicially recognizable doctrine grounded on the theory that a patentee will not be permitted to extend his monopoly beyond that contemplated by law. Thus, it can be seen that 35 U.S.C. § 101, the usual authority for prohibiting double pat-

enting where the *same* invention is involved, being limited to utility patents must be read as "may obtain *a* [utility] patent," while 35 U.S.C. § 171, being limited to design patents must be read as "may obtain *a* [design] patent" (emphasis supplied). Hence, while statutorily approved double patenting rejections may exist in utility-utility situations or design-design situations, we do not see how there can logically be a statutory base in design-utility situations because of the distinct nature of the two. This view is not inconsistent with the above cited decisions of this court since nowhere therein were the double patenting rejections based on a statutory provision.

■ However, a problem still exists where the same feature constituting the novel utilitarian aspect also produces a unique ornamental appearance, as the tire tread in *Hargraves*, supra. It can be argued, as was attempted in *Hargraves*, that the design patent is thus invalid in view of the case law stating that a design patent cannot properly be obtained on the configuration of an article made imperative by the utilitarian purpose of the article.[8] The invalidity of the design patent thus presumably defeats double patenting rejections. Such argument is unconvincing to this court, however not only because this court lacks jurisdiction to determine the validity of an issued patent but also since it would raise serious questions concerning an appellant's good faith in not only challenging the validity of his own patent but also in applying for a design patent on a configuration known to him to be functional. Moreover, if the functionality of the design is known only to the patentee, as it well might be, he will have enjoyed, practically speaking, a monopoly for the

---

8. Appellants raise the point but do not make this argument, stating in their brief:

The concept of appellants' earlier issued design patent being invalid *ab initio*, on the theory that if there is double patenting the design patent must have been to unpatentable subject matter, is not discussed in this brief. Permitting a patentee to later challenge the validity of his own patent would do violence to the patent system by injecting factors of uncertainty and instability.

years that the design patent has been in existence.

■ We agree, therefore, with this court's prior cases sanctioning double patenting rejections in design-utility situations, while pointing out that such rejections are based on judicial doctrine grounded on the public policy that abhors improper extensions of monopoly, even in the case where an express statutory basis for rejection is lacking. This is the case, irrespective of whether the patent relied on in the rejection and the application on appeal involve the same invention, or whether they involve inventions which are obvious variations of one another.[9]

Finally, we turn to the factual inquiry required here and the issues raised by appellants' points 2, 3 and 4, supra. We note that the board characterized the double patenting rejections based on the design patent as being under 35 U.S.C. § 101. While we disagree with that characterization, we do not believe that error in stating the basis to be fatal and accordingly treat the rejections simply as "double patenting of the improper extension of monopoly" type.

■ Appellants argue that their design patent protects only the ornamental design, while the claims on appeal are directed to the exact structure and function of the lamp. The claims on appeal, it is urged, require the cooperation of certain elements, namely an electrode, a phosphor coating, an ionizable medium and starting gas and an envelope of vitreous material, not shown nor covered by the design patent. We cannot accept this argument. The design patent protects the article of manufacture embodying the ornamental configuration. 35 U.S.C. § 171. The article of manufacture is recited therein as being a

fluorescent lamp. In our opinion, the evidence of record clearly establishes that the term "fluorescent lamp" has a well-defined meaning which necessarily includes those elements recited in the claims on appeal. Once the design patent expires, the public should be free to construct fluorescent lamps having the helicoid configuration disclosed without restraint by the claims here on appeal. While the claims on appeal employ terminology which includes helicoid design other than the specific design of the patent, we do not find such differences significant here. Nor do appellants seriously so contend. We agree with the board that the claims on appeal are directed to an obvious variation of the invention defined by the claims of the design patent as demonstrated by the secondary evidence of record.

Appellants further argue that no extension of monopoly will exist since there are several ways in which the invention covered by the design patent can be practiced without infringing the claims on appeal. Without discussing appellants' hypothesis in detail, we note only that these appear to be unrealistically strained efforts to produce an article that conforms to the illustration in the design patent but not to the claims on appeal and results in an article of dubious commercial worth.[10] We fail to see the pertinence of the affidavit placing in evidence an advertisement of a table lamp having a helicoid "metal candlestick" base.

■ While it may be unnecessary to do so, we treat also the "obviousness" type double patenting rejection based on Olsen and Ewest. We cannot sustain that rejection. Comparing the invention defined in the claims of Olsen with that defined in the claims on appeal, we fail to see that the latter is obvious.

9. The next question logically would be whether a terminal disclaimer will overcome a holding of double patenting in the design-utility area as we have held that it will overcome double patenting rejections in the utility patent area where those rejections are based on the judicial doctrine of preventing unlawful time-

wise extensions of monopoly. Since no terminal disclaimer is properly before us for consideration, we must refrain from deciding that question here.

10. For example, making the lamp envelope only and painting it as a barber pole.

Olsen calls merely for a glass tube having *disconnected* sections and even if Ewest would render obvious the use of such tube for fluorescent lamps, the desired noncircular cross-section arising from a continuous helical groove would be lacking.

Accordingly, the decision of the board is affirmed with respect to the rejection of claims 1, 6, 7, 9, 15, 24 and 26 to 28 as unpatentable over the design patent on the ground of double patenting, and reversed with respect to the rejection of claims 7, 9, 24 and 26 to 28 as unpatentable over the claims of Olsen in view of Ewest.

Affirmed.

BALDWIN, Judge (concurring).

I am in complete agreement with the majority opinion, but wish to take this opportunity to adhere to my position regarding the handling of terminal disclaimers by the Patent Office as set forth in the concurring opinion in In re Jursich, 56 CCPA 1141, 410 F.2d 803 (1969).

I particularly approve of the action taken by the Board of Appeals in such cases as Ex parte Fertig, 155 USPQ 475 (1967) and Ex parte Deering, 157 US PQ 164 (1967).