**MR. HANGER, INC.**
v.
**CUT RATE PLASTIC HANGERS, INC., et al.**
No. 72 C 419.

United States District Court,
E. D. New York.
Feb. 11, 1974.

Kirschstein, Kirschstein, Ottinger & Frank, P. C. by Bertram Frank, New York City, for plaintiff.

Bauer & Amer, P. C. by Myron Amer, Mineola, N. Y., for defendants.

RE, Judge.*

In this patent infringement suit, the crucial question presented pertains to the validity of United States Patent No. 3,249,270. It is brought by plaintiff, a manufacturer and seller of garment hangers, against one individual defendant and three corporate defendants. The individual defendant is president and principal stockholder of the corporate defendants, also sellers of garment hangers.

The complaint originally alleged causes of action for both patent infringement and unfair competition. By order of this court all causes of action other than those relating to patent infringement were dismissed. Defendants' answer denied any infringement and interposed defenses of invalidity due to double patenting, prior invention, knowledge and use, obviousness, and irregularities in the prosecution of the application before the United States Patent Office. Prior to trial, by stipulation, the defendants admitted infringement of claim 9 of the suit patent. As a consequence, the scope of the trial and the issue was limited to proof of the validity or invalidity of claim 9 of the suit patent.

Plaintiff is the owner of the suit patent by assignment from Benjamin Zuckerman, now president of the plaintiff corporation. The patent, granted May 3, 1966, is entitled "GARMENT SUPPORT MEANS", and specifically describes a garment hanger which is intended to support and display waisted garments having an elasticized portion. Plaintiff asserts that the "reason for this invention . . . was because of a long felt need in the garment industry to properly display children's garments in such a manner that the purchasing public would be able to view children's outfits without dislodging [them] from the hangers through ordinary customer handling". (Plaintiff's Pre-trial Brief at p. 2)

As may be noted, claim 9 describes the entire structure of the garment hanger. At the trial, however, it was only the following emphasized portion of claim 9 which was regarded to be the improvement in an otherwise old garment hanger combination:

"9. A garment support means comprising a pair of transfersely extending shoulders, a hook in communication with said transversely extending shoulders for connection to a display bar, side walls extending downwardly from said transversely extending shoulders, said side walls having an upper portion and a lower portion, a waistband support means formed at the junction of said upper portion and said lower portion, a horizontal reinforcing strut connected between said side walls, *a plurality of legs extending downwardly from said horizontal reinforcing strut around which the waistband of a garment may be twisted, and a lateral portion on each of said legs for catching beneath the waistband thereby preventing the waistband from being pulled downwardly therefrom.*" (Emphasis supplied)

The purpose of these structures is described as follows in the patent specification, which should be read in conjunction with Figures 1, 4 and 7 in the Appendix "A" to this opinion:

"With this disposition of the legs 70 if a waisted garment, particularly with an elasticized waistband 68,n having its elasticized waistband 68 in its unexpanded condition larger than the width of the outwardly flared lower portion 42 of the support means 10, the waistband 68 may be wrapped about the legs 70, as shown in FIGURES 4 and 7. In this manner the waistband 68 will be prevented from sliding over the lower portion 42 of the support means 10 because of its wrapped condition and will further be prevented from sliding downwardly

---

* Judge, U. S. Customs Court, sitting by designation.

because the lateral portions 72 of the legs 70 which may be hooked under the waistband 68. Under normal conditions, manufacturers shipping garments pre-hung would be required to pin or clip the waisted garment, however such pinning does not position the garment. It will be recognized that the mere pinning or clipping will not prevent the same from shifting, however, if the waistband 68 is twisted about the legs 70, shifting would be impossible."

During trial, plaintiff further limited the claimed improvement solely to the "lateral portion" of the downwardly extending leg which catches beneath the waistband thereby preventing the waistband from being pulled downwardly. Actually, this limitation on the scope of the claimed invention antedated the trial by stipulation of the parties dated June 4, 1973. An examination of the agreed infringing and non-infringing exhibits, annexed to the stipulation, will reveal that the sole difference between the two is the existence or non-existence of the lateral portions of the downwardly extending legs.

Plaintiff's first witness, Mr. Benjamin Zuckerman, identified the suit patent as his invention, and also identified four garment hangers, described as Mr. Hanger Inc. models 100, 200, 300 and 400. The four models were submitted as being manufactured and sold. He explained and demonstrated how the hangers can accommodate a range of sizes of waisted garments by the twisting of the garments around the downwardly extending legs thus taking up the slack which exists when the garment waist is larger than the outer width of the garment hanger. Such testimony, however, is largely irrelevant to the nonobviousness of that limited part of claim 9 which deals with the lateral portions. Indeed, the objective of accommodating varying sizes of waisted garments on the same hanger appears more or less to have been accomplished in the Clifford E. Currier patent 2,608,324 granted August 26, 1952 (Appendix "B"), and in the Jack M. Zuckerman patent 3,007,616 granted November 7, 1961 (Appendix "C").

Although Mr. Benjamin Zuckerman may have attempted to solve the problem of a garment manufacturer having to stock many different sizes of hangers this objective was not in fact accomplished. Mr. Benjamin Zuckerman's testimony reveals clearly that it was still necessary to manufacture at least four different sizes of hangers to accommodate a range of differently sized garments. Furthermore, by his own statements at the trial, one would have to examine the particular garment to determine which hanger would be appropriate, i. e., a garment of a given size would not necessarily fit on a particular model hanger.

Plaintiff's expert witness, Mr. William R. Woodward, testified generally that upon his reading of claim 9 of the suit patent, and examination of the prior art references cited by the patent examiner, it was his opinion that the suit patent was valid. Since Mr. Woodward apparently did not examine the file wrapper in reaching his conclusion, the defendants were unable to lay a proper foundation for the introduction of the file wrapper through Mr. Woodward. No expert was called by the defendants, and the file wrapper was never introduced into evidence. With the limitation placed on Mr. Woodward's testimony, and the absence of the file wrapper as part of the evidence, this court can give but little weight to the testimony of Mr. Woodward. Only the file wrapper, together with an expert familiar with its contents, can disclose to what extent the patent examiner considered the prior art references cited. Mr. Woodward's testimony did little more than approve the conclusion reached by the patent examiner in granting the suit patent.

Plaintiff cites the statutory presumption of validity. However, no evidence was adduced at trial, nor does the

suit patent indicate, that either the Jack M. Zuckerman design patent 192,280, granted February 20, 1962 (Appendix "D") or the Currier patent 2,608,324, granted August 26, 1952, was considered by the patent examiner. While it is true that failure of the examiner to cite pertinent prior art does not, in and of itself, invalidate the patent, Shaw v. E. B. & A. C. Whiting Company, 417 F.2d 1097, 1104 (2d Cir. 1969), cert. denied, 397 U.S. 1076, 90 S.Ct. 1518, 25 L.Ed.2d 811 (1970), a failure to consider relevant prior patents "undercuts" or weakens the existing presumption of validity. Lemelson v. Topper Corporation, 450 F. 2d 845, 849 (2d Cir. 1971), cert. denied, 405 U.S. 989, 92 S.Ct. 1253, 31 L.Ed.2d 456 (1972) ; Reeves Brothers, Inc. v. U. S. Laminating Corp., 417 F.2d 869, 872 (2d Cir. 1969).

■ Having closely examined the suit patent, and the prior art introduced at trial, this court is constrained to conclude that claim 9 of the United States patent 3,249,270 is invalid. Careful examination has compelled the conclusion that the differences between the subject matter of claim 9 of the suit patent and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the hanger art. 35 U.S.C. § 103 (1952). One in the hanger art, with the Currier patent 2,608,324, the Jack M. Zuckerman patent 3,007,616 and the Jack M. Zuckerman Design patent 192,280 before him, would require no more than ordinary skill in arriving at the combination of elements recited in claim 9 of plaintiff's patent.

It has been stated:

"* * * the test of obviousness is not express suggestion of the claimed invention in any or all of the references but rather what the references taken collectively would suggest to those of ordinary skill in the art *presumed* to be familiar with them." (Emphasis in original) Application

of Rosselet, 347 F.2d 847, 851, 52 CCPA 1533 (1965).

Lateral portions, closely resembling hooks or feet, are shown in Design patent 192,280. Little ingenuity indeed would have been required to combine those elements with the downwardly and laterally depending legs of the 3,007,616 patent, or the 2,608,324 patent, to produce the end result broadly claimed in the suit patent. Indeed, the 3,007,616 patent describes the relevant structure as follows:

"A similar pair of laterally, but narrower spaced waist support projections 32 and 34, also are connected with the support member 26. When the hanger is molded of plastic material, the pairs of waist support projections 28, 30 and 32, 34 are molded integral with the waist member 26. Each waist support projection is provided with a support surface that is directed angularly downward and laterally outward from the support member 26 to present increasingly wider waist supporting diameters for waisted garment articles to be mounted thereon or placed thereabout."

In view of the simplicity of the alleged invention and the clearly relevant prior art, it is not inappropriate to refer to the section 103 "obviousness test" suggested by Judge Rich in Application of Winslow, 365 F.2d 1017, 1020, 53 C CPA 1574 (1966).

■ At the trial, plaintiff attempted to reinforce the presumed validity of his patent by showing a long felt need in the industry, commercial success and the necessity of copying by his competitors. Such factors should be considered "to 'guard against slipping into use of hindsight,' * * * and to resist the temptation to read into the prior art the teachings of the invention in issue". They are only relevant, however, where the question of validity is a close one, and might serve to "tip the scales of patentability" Graham v. John Deere Company of Kansas City, 383 U.S. 1, 36,

86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Those factors have been given due consideration here—more, perhaps than is warranted by Anderson's Black Rock, Inc. v. Pavement Salvage Co., 396 U.S. 57, 61, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969)—but have not been found persuasive of nonobviousness.

■ There remains the question of double patenting which also bears on the validity of claim 9. The Benjamin Zuckerman Design patent 204,175 was filed March 8, 1965 and granted March 22, 1966 (Appendix "E"). The Benjamin Zuckerman patent 3,249,270 was filed May 3, 1965 and granted May 3, 1966. Since both patents were co-pending and filed by the same inventor, the Design patent 204,175 is not available as evidence of prior art to support a holding of either lack of novelty under 35 U.S.C. § 102 (1952) or obviousness under 35 U.S.C. § 103 (1952).

■ Plaintiff was apprised of the defense of double patenting on or about July 24, 1972, the date the answer was served. On May 29, 1973 a pre-trial conference was held which established June 7, 1973 as the date for trial. It was assumed by all parties, and the court as well, that all pre-trial proceedings were complete. However, it was revealed at the trial that plaintiff had executed a terminal disclaimer, pursuant to the second paragraph of 35 U.S.C. § 253 (1952). Until the trial, plaintiff had never advised the defendants of the existence of the disclaimer. Under the circumstances, the court might well have excluded the document, and not have considered it on the question of double patenting. Nevertheless, since the document was received into evidence, the court will consider the effect of the terminal disclaimer on defendants' assertion of double patenting.

■ The following statements on the question of double patenting, and the effect of a terminal disclaimer, are particularly pertinent:

"It should now appear clear from this court's recent decisions in this area that double patenting rejections usually take one or both of two forms, namely, the 'same invention' type of 'double patenting' identifiable with the statutory provision 35 U.S.C. § 101, saying that an inventor may obtain a patent, interpreted as meaning only one patent; and the 'obviousness' type 'double patenting,' a judicially-created doctrine grounded in public policy rather than statute and primarily intended to prevent prolongation of monopoly by prohibiting claims in a second patent not patentably distinguishing from claims of a first patent. This court has held that a terminal disclaimer is ineffective where it is attempted to twice claim the same invention; however, an 'obviousness' type of 'double patenting' rejection may be obviated by a terminal disclaimer." (Emphasis in original). Application of Thorington, 418 F.2d 528, 534, 57 CCPA 759 (1969), cert. denied, 397 U.S. 1038, 90 S.Ct. 1356, 25 L.Ed.2d 649 (1970). (footnote omitted).

■ The statutory aspect of double patenting is inapplicable here inasmuch as the earlier patent was a design patent and the later patent was a utility patent. As was stated in the *Thorington* case:

"* * * it seems clear to us that double patenting rejections in a design-utility situation cannot be predicated on any statutory provision, but rather only on a judicially recognizable doctrine grounded on the theory that a patentee will not be permitted to extend his monopoly beyond that contemplated by law. Thus, it can be seen that 35 U.S.C. § 101, the usual authority for prohibiting double patenting where the same invention is involved, being limited to utility patents must be read as 'may obtain a [utility] patent,' while 35 U.S.C. § 171, being limited to design patents must be read as 'may obtain a [design] patent' (emphasis supplied). Hence, while statutorily approved double patenting rejections may exist in utility-utility situations or design-design sit-

uations, we do not see how there can logically be a statutory base in design-utility situations because of the distinct nature of the two." *Application of Thorington,* 418 F.2d at 536.

One non-statutory aspect of double patenting, i. e., that dealing with the extension of Design patent 204,175 beyond the statutory term in an "obvious" manner, is obviated by the terminal disclaimer which dedicated to the public that remaining term of the 3,249,270 patent in effect on or after March 22, 1980. Thus, both the suit patent and the Design patent 204,175 will terminate simultaneously, and not extend the patent monopoly beyond 14 years for both patents.

■ These observations however do not dispose of the double patenting question. As was stated in Application of Swett, 451 F.2d 631, 635, 59 CCPA 726 (1971):

> "This court has previously stated that there is no statutory basis for double patenting rejections in design-utility situations. In re Thorington, 418 F. 2d 528, 57 CCPA 759 (1969). However, in *Thorington* the court went on to state that double patenting rejections in such situations, both of the 'same invention' type and the 'obviousness' type, are judicially sanctioned. The double patenting rejection in this case is of the 'same invention' type, and like 'same invention' type double patenting rejections in utility-utility or design-design situations, we think such rejections may be proper even where no timewise extension of monopoly is involved."

■ Thus, the remaining non-statutory, but judicially sanctioned, aspect of double patenting, i. e., whether the "same invention" is actually being twice claimed in Design patent 204,175 and in claim 9 of utility patent 3,249,270, will now be considered. It cannot be gainsaid that claim 9 of utility patent 3,249,270 is nearly a word picture of the design claimed in Design patent 204,175, or that there is an overlap between what is recited in claim 9 and what is shown in that Design patent. Mere overlap, however, is not necessarily sufficient to establish that identical subject matter is being claimed. Application of Swett, *supra.* Here, a reading of claim 9, including the word "comprising" in the preamble thereof, abundantly establishes that other hanger structures are encompassed by the claim language in addition to the structure specifically "shown and described" in Design patent 204,175 (or that which could be said to be a "colorable imitation" thereof, 35 U.S.C. § 289). As illustrative of that conclusion, reference may be had to Figures 1 and 8 (Appendix "A") of utility patent 3,249,270 which show hanger structures differing noticeably in appearance from that shown in Design patent 204,175, yet which are encompassed by the language of claim 9. With those differences in scope, and possibly others, existing between the respective claims of the utility and design patent, the court is of the opinion that the same invention is not being twice claimed. See also Application of DuBois, 262 F.2d 88, 46 CCPA 744 (1958).

Although no proof was adduced at the trial on the matter, one final observation may be made. Plaintiff's exhibit 5 was identified at trial by Benjamin Zuckerman as being "Mr. Hanger, Inc. model 100". A close examination of the exhibit reveals the following marking on the bottom wall:

"YANKEE PLASTICS N.Y.C.
PAT. PEND. RD 1961"

The preceding marking would appear to indicate that in 1961 there was a pending patent application by Yankee Plastics, Inc., and/or that the exhibit was manufactured in 1961. Only one of the prior art references introduced at trial resembles this structure to any degree, or coincides with the marked date of this exhibit, i. e., the Jack M. Zuckerman Design patent 192,279 filed June

16, 1961 and granted February 20, 1962. However, that patent lacks the horizontal strut with its downwardly depending legs. It would thus appear that one of the following inferences may be drawn from the structure contained in the exhibit which is the subject matter of this suit:

1. the invention was known or used by others before the invention thereof by Benjamin Zuckerman;

2. the invention was in public use or on sale in this country more than one year prior to the date of the application for patent in the United States;

3. the hanger was falsely marked.

Without any proof as to these matters, no conclusions can be reached. The court notes, however, that if any of these possibilities did in fact exist, plaintiff may not have met the conditions for patentability set forth in 35 U.S.C. § 102(a) or (b) (1952). In the alternative, some person may have been subject to the criminal penalties set forth in 35 U.S.C. § 292 (1952).

In view of the foregoing it is the determination of the court that claim 9 of the suit patent is invalid since the subject matter as a whole would have been obvious at the time of the invention to a person having ordinary skill in the hanger art.

 In their post-trial brief, defendants argue that they should be awarded attorneys' fees and costs. It is the opinion of the court that the present case is not "exceptional" and does not merit award of fees or costs. 35 U.S.C. § 285 (1952).

This opinion contains findings of fact and conclusions of law in accordance with F.R.Civ.P. 52.

Submit judgment.

Appendix A to E on Following Pages

APPENDIX A

May 3, 1966 B. ZUCKERMAN 3,249,270

GARMENT SUPPORT MEANS

Filed May 3, 1965 2 Sheets–Sheet 1

FIG. I

FIG.4

INVENTOR

BENJAMIN ZUCKERMAN
BY HIS ATTORNEY

May 3, 1966 B. ZUCKERMAN 3,249,270

GARMENT SUPPORT MEANS

Filed May 3, 1965 2 Sheets–Sheet 2

FIG.7

FIG.8

INVENTOR
BENJAMIN ZUCKERMAN
BY HIS ATTORNEY

APPENDIX B

Aug. 26, 1952 C. E. CURRIER 2,608,324
PINLESS SKIRT HANGER
Filed Sept. 13, 1949

*Fig.1.*

*Fig.2.*

Clifford E. Currier
INVENTOR.

BY [signature]
[signature] Attorneys

APPENDIX C

Nov. 7, 1961 J. M. ZUCKERMAN 3,007,616

GARMENT HANGER

Filed Dec. 8, 1959

FIG. I

INVENTOR.

JACK M. ZUCKERMAN

BY *Jerome Bauer*

ATTORNEY.

**100**

APPENDIX D

192,280

GARMENT HANGER

Jack M. Zuckerman, Elmhurst, N.Y., assignor to Yankee Plastics, Inc., New York, N.Y., a corporation of New York

Filed June 28, 1961, Ser. No. 65,752

Term of patent 14 years

(Cl. D80—8)

FIG. 1

FIG. 1 is a front elevational view of a garment hanger, showing my new design, the rear being essentially the same; and

APPENDIX E

204,175

GARMENT HANGER

Benjamin Zuckerman, New York, N.Y., assignor to Mister Hanger, Inc., New York, N.Y., a corporation of New York.

Filed Mar. 8, 1965, Ser. No. 84,145

Term of patent 14 years

(Cl. D80—8)

FIG. 1

FIGURE 1 is a front elevation of a garment hanger, its other side having the exact same appearance.

I claim:

The ornamental design for a garment hanger, as shown and described.