**TRANSMATIC, INC., Plaintiff,**

v.

**GULTON INDUSTRIES, INC., et al., Defendants.**

**Civ. No. 75–71145.**

United States District Court,
E. D. Michigan, S. D.

Oct. 14, 1977.

Ernie L. Brooks, Reisig, Ethington, Barnard, Perry & Brooks, Southfield, Mich., for plaintiff.

Robert G. Mentag, Detroit, Mich., for defendants.

### OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

CORNELIA G. KENNEDY, District Judge.

Plaintiff has brought this action for a declaratory judgment that patent 3210875 (hereafter referred to as "875 patent") is invalid. Among the grounds asserted for invalidity is that the 875 patent and patent D–201380 (hereinafter referred to as "380 patent") also owned by defendant, claim a single lighting fixture and that the 875 patent is invalid for double patenting.

Patent 875 is a utility patent on a lighting fixture invented by M. Schwenkler. It was filed on February 5, 1963, and issued October 12, 1965, for a period of 17 years. Its exclusive licensee is defendant Gulton Industries, Inc. Patent 380 is a design patent bearing the title lighting fixture, also invented by Mr. Schwenkler. It bears a filing date February 14, 1963, and was issued on June 15, 1965, for a period of 14 years. Its exclusive licensee is also Gulton Industries, Inc.

Double patenting exists if two patents are issued for the same invention. *Miller v. Eagle Mfg. Co.*, 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed.2d 121 (1894). The law is clear that an inventor is not entitled to the issuance of two patents at different times for the same invention. *Preformed Line Products Co. v. Fanner Mfg. Co.*, 328 F.2d 265 (6th Cir. 1964). A patent grants a limited monopoly to the patentee in exchange for public disclosure of an invention. Thus the patentee must grant to the public the right to use the invention after the limited monopoly expires. Plaintiff asserts here that the 875 patent will bar the public use of the invention in the 380 patent after the 380 patent expires and that the 875 patent must be held invalid for double patenting.

Plaintiff asserts that the Patent and Trademark Office and the Court of Customs and Patent Appeals would have barred the 875 patent as a matter of law for double patenting and that this Court has the same power to dispose of the 875 patent on this record by Summary Judgment.

Plaintiff urges that there are no material issues of fact; and that the question of whether there is double patenting between the aforesaid patents can be determined from the faces of the patents themselves and their plain language without the aid of expert testimony.

Patent 380, the Design Patent, has a single claim which states "I claim: the ornamental design for a lighting fixture, as shown and described." The patent bears a drawing which includes as figure 2 a figure identical to figure 3 of the 875 patent with the exception that the latter figure, since it relates to a utility patent, bears various numbers referred to in the specification to that patent. Defendant does not dispute the fact that these two drawings are identical. Rather it urges that the design patent claims only the lens portion of the drawing. Patent 380 states, just before the claim, "the dominant features of my design reside in the portions shown in full lines." The portions shown in full lines are only the lens portions of the lighting fixture. The lighting source and the reflector portion of the 380 patent are shown in dotted lines. On this basis defendant asserts that the invention claimed in the 380 patent is therefore, only the lens features, while the invention claimed in the utility patent 875, is the lighting fixture as a whole including the positioning of the light source and the shape of the reflector surface. Defendant relies upon Chapter 15 of the Manual of Patent Examining Procedures. This manual, as in effect from November 1961 to 1964 provided in part Section 1503.02 Drawing:

. . ., "Dotted or broken line showing is also employed to show such portions of the article claimed which are not important. Such a showing should be explained in the specification by a statement that the dominant features of the design reside in the portions shown in full lines. In every case dotted line showing is notice that the portion so shown is an immaterial part of the design." Plaintiff on the other hand relies on other language in the same section. The preceding paragraph provides:

"In general, the showing should be strictly confined to the article on which design patent protection is sought and no additional disclosure in the nature of structure to illustrate environmental use or association with other apparatus not an actual part of a design, is ordinarily permitted. Only in those cases where clarity of disclosure would be greatly sacrificed is such extraneous showing allowed, and in such cases it is permitted only by showing the same in dotted lines with a statement inserted in the specification to the effect that dotted line showing is for illustrative purposes only."

Plaintiff asserts further that defendant may not now disclaim as not part of the 380 patent that portion of the lighting fixture not specifically included in the lens. In order to secure the patent, the file wrapper shows that an amendment was filed by the patentee's attorney on December 12, 1963, in which the fixture of the 380 patent was described as follows:

"Applicant fixture is a 'car card' fixture as clearly shown in Exhibit B. The central concave portion of the lens panel therein receives therein a plurality of card advertisements which are illuminated for display. The opposite marginal lens areas provide concentrated light for passenger reading and indirect overhead general illumination. The fixture is illustrated in Fig. 1 in its mounted position in the passenger vehicle such as a subway car. The fixture is designed for mounting in opposite upper curved corners of the interior of the car thus placing the concave display area in oblique relation with the lower most marginal lens area as viewed in Figs. 1 and 2 being positioned directly over the seats occupied by passengers in a horizontal plane, in the opposite marginal lens area being located in a vertical plane directly below the car ceiling to direct light outwardly across the top portion of a car for general illumination thereof."

It was not until after this amendment was filed that the 380 patent was allowed. Plaintiff also points to portions of the file wrapper of the 380 patent as clearly indicating that it was the design for a lighting fixture which was claimed and not the design merely for the lens as defendant now asserts. Thus, the oath, which was attached to the application for the patent, states that the inventor is claiming to be the "original, first and sole inventor of the design for a LIGHTING FIXTURE, described and claimed in the annexed specification." (Emphasis added). Figure 1 of the drawings states that it is a "perspective view of the fixture looking from below," while Figure 2 is a "transverse section of the fixture". It should be noted that at the same time the patentee was indeed claiming similar fixtures with convex and flat central portions of the lens, as opposed to the concave central portion of the lens in the instant patent. Both the other two applications for a design patent were withdrawn.

Plaintiffs also point to the fact that the defendant did not disclose to the patent examiner of patent 380 the fact that there was a pending utility patent application for 875.

The first issue is whether it is a question of fact or law as to whether the design patent 380 is limited solely to the lens configuration or whether it is a patent for a lighting fixture as plaintiffs contend. This is critical because Claim 1 from the 875 patent claims:

"1. A cornice type lighting fixture comprising,

2. A light source housing,

3. A light transmitting panel, and

4. A light source in said housing,

5. Said panel including a pair of lens sections disposed in approximately right angular and spaced relation for controlled multiple directional concentrated light transmission,

6. One of said lens sections being at least generally remote from said source,

7. A translucent display section intermediate said lens sections for illumination of a display forming a part thereof,

8. Said display section being of an area which is substantially greater than the area of either of said lens sections, and

9. Means on said display section for detachably mounting a display thereover,

10. Said housing including light reflective inner surface portions arranged to direct light from said source at least to said display section and remote lens section."

If the design patent 380 is a design patent for a *fixture* as opposed to the *mere lens*, it clearly includes most if not all of the elements of Claim 1 from the 875 utility patent. It clearly includes "(1) a cornice type lighting fixture comprising (2) a light source housing" since any lighting fixture by implication includes a light source housing and the drawings show such light source housing. It clearly includes (3) "a light transmitting panel" since that is claimed whether the design patent includes the entire fixture or merely the lens. Patent 380 clearly claimed element (4) "a light source in said housing" since any lighting fixture must have a light source. It clearly includes element (5) whether it is a lens panel or a lighting fixture. Element (5) states "said panel including a pair of lens sections disposed in approximately right angular and spaced relations for controlled multiple directional concentrated light transmission". With regard to element (6) if the design patent as claimed includes the entire drawing this element is also disclosed since "one of said lens sections being at least generally remote from said source

[light source] is disclosed by the drawing." Element (7) of claim 1 of the 875 patent "a translucent display section intermediate said lens section for illumination of a display forming a part thereof" is clearly included in both the design patent and the utility patent as is element (8) of the utility patent: "said display section being of an area which is substantially greater than the area of either of said lens sections", as well as element (9) "and means on said display section for detachably mounting a display thereover." The design of the lens portion shows edges into which display cards can be placed as does the drawing on figure 3 of the 875 patent. Element (10), "Said housing including light reflective inner surface portions arranged to direct light from said source to at least said display section and remote lens section," is likewise shown in the drawing of patent 380, with the possible exception that the back of the housing is not shown as being reflective. The arrangement of that section, however, is identical in the drawings for both patents. It should be noted that there is nothing technical about the claims of either of the two patents. Element 10 does not require a specific arrangement or describe a specific arrangement of the inner surface portions to direct the light source to the remote light section and the display section. The shape of the fixture is sufficiently simple that there is no technical knowledge required to conclude that light will be directed to all three lens faces if the back of the fixture contains a reflective surface. The amount of light, of course, will vary depending upon the positioning of the fixture and the type of reflective surface. The amount to which it will vary is undoubtedly a technical matter but the utility patent does not claim a specific reflective surface or a specific shape or any specific location of the light source. Indeed, the present product manufactured by the defendant contains a single fluorescent bulb located in the lower portion of the fixture rather than the dual fluorescent bulbs shown in the drawings. Plaintiff's hearing Exhibit which is attached hereto and incorporated herein by reference, clearly demonstrates that each of

the elements of Claim 1 of the utility patent may be found in the drawings of the design patent as outlined above.

Whether the claim of the design patent includes the entire drawing, is a matter of law rather than an issue of fact. It depends upon whether the invention as claimed is only that illustrated in the lens panel or the entire illustration and in the alternative whether the balance of the illustration aside from the lens panel is so obvious that it is implied in any event. The cases involving double patenting between design patents and utility patents are few. The Seventh Circuit, however, in the recent case of *Ropat Corp. v. McGraw-Edison Co.*, 535 F.2d 378 (1976) had occasion to deal with a situation almost identical with that in the instant case. The novelty design feature claimed in the first to issue design patent for a popcorn popper produced a novel function which was claimed in a later issued utility patent for an electric corn popper. The Court found the patent invalid for double patenting. There, as here, the design patent claimed "the ornamental design for a corn popper substantially as shown" and was illustrated in two diagrams. The later issued utility patent called for a corn popper primarily composed of a base and cover. The base contained a shallow cooking vessel and heating element. The dome cover was described as possessing a volume substantially greater than that of the pan so that the corn rises and fills the dome as it is popped. The patentee Ropat brought suit against various defendants including McGraw-Edison for infringement of the utility patent. The defendants raised the defense of double patenting on a motion for summary judgment arguing that both patents claimed "the same invention" and that the utility patent invention was inherent in the design patent and the two inventions claimed in the two patents were identical. As the Court stated:

"The patent laws, of course, provide that a design patent and a utility patent may well be issued on the same construction. See 35 U.S.C. Sections 101 (utility), 171 (design). However, each such patent must claim a separate, distinct patentable

invention. *In re Barber*, 81 F.2d 231 (Cust. & Pat.App.1936)." [535 F.2d at 381.]

The Court recognized that when a double patenting situation involves a design patent and utility patent it is not easy to compare utility word claims with design picture claims in determining whether the same invention is claimed. It further noted:

"In comparing their claims, the mere use of the same design claimed in the design patent as the vehicle for describing the utility claimed in the utility patent is not dispositive. *Anchor Hocking Corp. v. Eyelet Specialty Company*, 377 F.Supp. 98, 101 (D.Del.1974); *Appel v. Lilling*, 60 F.Supp. 749 (S.D.N.Y.1945)." *Id.*

The Court went on to state the test that it would apply to determine whether the utility patent and the design patent claim the same invention:

"A review of the cases which do exist reveals various 'tests' for determining whether a design patent and a utility patent claim the 'same invention'. We believe the best formulation of the applicable standard in this situation is that set forth in such decisions as *In re Hargraves*, 53 F.2d 900, 19 C.C.P.A. 784 (1931), and *Application of DuBois*, 262 F.2d 88, 46 C.C.P.A. 744 (1958)." *Id.*

Those cases state that double patenting exists if the feature in which the novel esthetic effect resides is the identical feature which produces the novel function so that a structure embodying the mechanical invention would of necessity embody the design, and vice versa. 535 F.2d at 381. The Court held that as a matter of law the novel feature constituting the design claimed in the design for the popcorn popper is the large flat-top dome cover, the volume of which is greater than that of the cooking pan in the base, and that it was this novel design feature which produced the novel "pop-tip-serve" function which forms the essence of the utility patent claim. Ropat contended that the trial court had read into the design patent a feature not claimed or described, namely a shallow cooking pan in the base, and that since there was no cook-

ing vessel claimed or disclosed in the design patent one would not know whether the volume of the dome is greater than the cooking vessel. The Seventh Circuit pointed out that:

> "The design patent is granted pursuant to 35 U.S.C. § 171 on an *article of manufacture* as well as for a distinctive design. Being a corn popper, the article of manufacture present in the design patent here, must necessarily possess a cooking vessel and heating element in its base. Compare *Application of Thorington, supra,* 418 F.2d [528] at 533 (Cust. & Pat.App.). Regardless of the exact volume of the cooking pan in the popper claimed in the design patent, it readily appears from the design patent that its volume necessarily would be less than that of the dome."

So, in the instant case, even if defendant's design patent was for a lens panel for a lighting fixture if not a lighting fixture itself, it readily appears that a lighting source was required and that the fixture would have a back which would be a reflective surface. It was indicated by the patentee's attorney that the novel feature of the design patent is the prisms or lenses at each end which permit light to be shown down on the passengers so that the passengers may be able to read, and light shown against the ceiling so there is illumination for the vehicle together with a large light emitting panel which can hold advertising copy. The specification of the utility patent, 875, clearly demonstrates that this same feature is the invention claimed. Further, it is clear, in the instant case, that a person following the design patent as shown in the drawings would clearly infringe the utility patent since one manufacturing a fixture following the drawing of the design patent would have a fixture capable of functioning in the precise manner claimed in the utility patent.

■ As the Court pointed out in Ropat "a design patent and a utility patent need not claim every incidental feature of the other in order for both to claim the 'same invention' ". This same principle is enunciated in *Tidewater Patent Development v. Kitchen,* 371 F.2d 1004 (4th Cir. 1967). That case involved species patents. In that case, the Court pointed out "double patenting may exist even where, as here the claims in two cases are not *mutually cross-readable.* * * *Application of Zickendraht,* 319 F.2d 225, 229, 50 CCPA 1529 (1963)."

In discussing the question of double patenting in *Tidewater,* the Court went on to say "For a, species patent to escape conviction as a double patent of one or more claims in the genus patent, the species must represent a 'distinct, different and separable invention' ". A similar standard of a distinct separable invention exists in the case of design and utility patents.

The U. S. Court of Customs and Patent Appeals was presented with a problem similar to that in the instant case in *Application of Thorington,* 418 F.2d 528 (1969). That Court considered the unique or inventive features of a design patent and a mechanical patent and found that there was a single feature of novelty, and that feature of novelty appeared in the design patent. The Court pointed out that after the expiration of the design patent a person would still be confronted by the claims of the mechanical patent, so that the invention depicted in the design patent would still be unavailable to the public, notwithstanding the expiration of the term of the design patent. The patents involved in that case were for a fluorescent lamp. The appellant had argued that their design patent was granted solely on the outer appearance of the lamp envelope, apart from its structure and function. The Court pointed out that 35 U.S.C. § 171 authorized the patenting of a design patent on an *article of manufacture* and not just on appearance. It stated,

> ". . . in the instant case the article of manufacture is a 'fluorescent lamp', whatever connotation that term may have had at the time appellants invented the design thereon, not just the envelope or the appearance of one.

> "The term 'fluorescent lamp' at the time appellants filed applications for the instant 'mechanical' and their design patents had acquired a well understood

meaning both in the dictionary and in the patent art, as the Examiner pointed out in his Answer, and such a lamp contemplated the various features of electrodes, ionizable gas and fluorescent coatings on the envelope which appellants here contend are the distinguishing features of the lamp of the instant application [mechanical patent] over those of the design patent." 418 F.2d at 533.

The Appellant had set forth several reasons why the Court should not find double patenting. They are summarized on page 534 of the opinion:

"1. There can be no holding of double patenting in a design patent-utility patent situation because of the differences in:

(a) the statutory origin (35 U.S.C. 101 v. 35 U.S.C. 171);

(b) the subject matter protected (utility v. ornamentality by legal monopoly);

(c) the tests for infringement.

2. The design patent and the claims on appeal are directed to different inventions since the design patent fails to show the claimed elements of an electrode, a phosphor coating, an ionizable medium, a quantity of gas and an envelope of vitreous material.

3. There will be no extension of monopoly since the design covered by the design patent can be employed without infringing the claims on appeal.

4. The Olsen patent and the subject application are for different inventions when one compares the invention defined by the respective claims." 418 F.2d at 534.

The Court went on to discuss the rules of law that it would apply.

"First, however, we provide some general observations regarding the area of double patenting. It should now appear clear from this court's recent decisions in this area that double patenting rejections usually take one or both of two forms, namely, the 'same invention' type 'double pat-

enting' identifiable with the statutory provision 35 U.S.C. § 101, saying that an inventor may obtain a patent, interpreted as meaning only one patent; and the 'obviousness' type 'double patenting,' a judicially-created doctrine grounded in public policy rather than statute and primarily intended to prevent prolongation of monopoly by prohibiting claims in a second patent not patentably distinguishing from claims of a first patent. This court has held that a terminal disclaimer is ineffective where it is attempted to twice claim the same invention; however, an 'obviousness' type 'double patenting' rejection may be obviated by a terminal disclaimer." 418 F.2d at 534. (footnote omitted).

The Court then went on to reject the appellant's claim that there could be no double patenting in a design-utility patent situation because of the different statutory bases on which design and utility patents are predicated, namely, 35 U.S.C. sec. 101 for utility patents which states:

"Inventions Patentable.

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title,"

and 35 U.S.C. Sec. 171, Patents for Designs, which provides:

"Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

"The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided."

In discussing the decision of the district court in *Gross v. Norris*, 18 F.2d 418 (D.Md. 1927) in which that court noted that it is difficult to understand how double patenting can exist in the case of a design and a mechanical patent applicable to the same device, since the first pertains to appear-

ance, while the second relates to the mechanical structure of a device, the Court of Customs and Patent Appeals recognized the position defendant urges here. 418 F.2d at 535. However, it discussed its own earlier decision in *In Re Hargraves* 53 F.2d 900, 19 C.C.P.A. 784, in which a patentee's design patent recited a design for "resilient tires" and displayed in substance, the identical design shown by the drawings and fairly set out in the claims of the utility application on appeal. It had found that the same inventions were allowed and that granting a utility patent would further extend the appellant's monopoly. It also quoted from the language of its earlier decision that even if the design patents are void as being upon unpatentable subject matter, namely, tire treads, that the patentee could still not be given a patent upon his mechanical device. The court held that it "(a)ccept[s] the principle that double patenting is a proper ground of rejection if the features producing the novel aesthetic effect of a design patent or application are the same as those recited in the claims of a utility patent or application. . . ." 418 F.2d 536.

■ Here, as in *Hargraves, Ropat* and *Thorington* the invention in the design of the lens panel is the same invention as that in the utility patent. It is the design claimed which creates the novel or inventive effect in the mechanical or utility device claimed. That is so in the instant case whether the claim of the design patent is the lens panel or the fixture. However, as the Seventh Circuit held in *Ropat, supra*, the claim in a design patent is on an article, here a lighting fixture. Thus the claim in patent 380 is for a lighting fixture and includes the entire drawing, at least to the extent of a light source and a reflecting back.

Plaintiff's Motion for Summary Judgment is granted and Patent 3210875 is held to be invalid for double patenting.

See Appendix on next page.

APPENDIX

THE '380 PATENT AND THE '875 PATENT ARE
DIRECTED TO THE SAME INVENTION

THE '875 PATENT
(Fig. 3)

THE '380 PATENT
(Fig. 2)

Claim 1 From The '875 Patent

[1] A cornice type lighting fixture
comprising
[2] a light source housing,
[3] a light transmitting panel,
[4] and a light source in said housing,
[5] said panel including a pair of lens sec-
tions disposed in approximately right angular
and spaced relation for controlled multiple di-
rectional concentrated light transmission,
[6] one of said lens sections being at least
generally remote from said source,
[7] a translucent display section interme-
diate said lens sections for illumination of a
display forming a part thereof,
[8] said display section being of an area
which is substantially greater than the area
of either of said lens sections,
[9] and means on said display section for
detachably mounting a display thereover,
[10] said housing including light reflective
inner surface portions arranged to direct light
from said source at least to said display sec-
tion and remote lens section.

Claim From The '380 Patent

I claim:
The ornamental design for a lighting
fixture, as shown and described.