**TRANSMATIC, INC., Plaintiff-Appellee,**

v.

**GULTON INDUSTRIES, INC., and
Patent License Corp.,
Defendants-Appellants.**

No. 78–1113.

United States Court of Appeals,
Sixth Circuit.

Argued April 11, 1979.

Decided June 19, 1979.

Robert G. Mentag, Detroit, Mich., Morris Relson, New York City, for defendants-appellants.

Ernie L. Brooks, Reising, Ethington, Barnard, Perry & Brooks, Southfield, Mich., for plaintiff-appellee.

Before CELEBREZZE and ENGEL, Circuit Judges, and PECK, Senior Circuit Judge.

CELEBREZZE, Circuit Judge.

A utility patent, sometimes referred to as a mechanical patent, may be obtained by an inventor for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."[1] A design patent may be procured for "any new, original and ornamental design for an article of manufacture."[2] It is also a general rule of patent law that one may obtain only one patent per invention—double patenting is not allowed and results in all but the first-issued patent on the invention being declared invalid. The instant case, one of first impression in this circuit, requires this court to analyze the inter-relationship of these principles.

Plaintiff-appellee, Transmatic, Inc., brought this action seeking a declaration that a utility patent held by defendants-appellants, Gulton Industries, Inc. and Patent License Corp., was invalid. The grounds asserted for such invalidity included that the utility patent constituted double patenting of a previously issued design patent held by Gulton and Patent License. The district court agreed that double patenting had occurred and granted summary judgment in Transmatic's favor. 442 F.Supp. 911, 196 U.S.P.Q. 788 (E.D.Mich.1977). We reverse.

**I.**

The patents involved in this lawsuit are both for interior lighting fixtures which are

---

1. 35 U.S.C. § 101:

   Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

2. 35 U.S.C. § 171:

   Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

   The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided.

employed along the ceilings of buses, subway cars, and other mass transit coaches. Their general use is depicted in the following figure:

Appendix, at 26; Figure 1, Utility Patent.

The utility patent, No. 3,210,875 (hereinafter " '875 patent" or "utility patent"), was applied for on February 5, 1963, and issued on October 12, 1965, for a term of seventeen years. The named inventor was Norbert Schwenkler. The patent was assigned to Patent License, which is a wholly owned subsidiary of Gulton, the exclusive licensee. The lighting fixture is shown in the following cross-sectional figure:

Appendix, at 27; Figure 3, Utility Patent.

---

The four claims of the '875 patent are:

1. A cornice type lighting fixture comprising a light source housing, a light transmitting panel, and a light source in said housing, said panel including a pair of lens sections disposed in approximately right angular and spaced relation for controlled multiple directional concentrated light transmission, one of said lens sections being at least generally remote from said source, a translucent display section intermediate said lens sections for illumination of a display forming a part thereof, said display section being of an area which is substantially greater than the area of either of said lens sections, and means on said display section for detachably mounting a display thereover, said housing including light reflective inner surface portions arranged to direct light from said source at least to said display section and remote lens section.

2. The fixture of claim 1 wherein said display section is of arcuate configuration with said display mounting means arranged along opposite margins thereof for retention of a display against the outer surface of said display section in arcuately conforming relation.

3. The fixture of claim 1 wherein said panel is of generally U-shape longitudinally thereof and projects from said housing, said lens sections being provided with means attaching said panel to said housing.

4. The fixture of claim 1 wherein said housing includes a specular inner surface portion and a light diffusing inner surface portion, said specular surface portion being arranged for the reflection of light toward said remote lens section and said

diffusing surface portion being arranged for the reflection of light toward said display section.

Appendix, at 31; Claims of Utility Patent.

The design patent, Des. No. 201,380 (hereinafter " '380 patent" or "design patent"), was applied for on February 14, 1963, after the utility patent application, and issued on June 15, 1965, before issuance of the utility patent, for a term of fourteen years. Again, the named inventor was Norbert Schwenkler and Patent License was the assignee and Gulton the exclusive licensee. The fixture is shown in the following figures:

Appendix, at 32; Figures 1 & 2, Design Patent.

The sole claim of the '380 patent is:

The ornamental design for a lighting fixture, as shown and described.

Appendix, at 32; Claim of Design Patent.

In the mid-1970's Transmatic began to manufacture a lighting fixture similar to those covered by these patents. Gulton learned of this development and sought to persuade potential Transmatic customers that Transmatic's fixtures would infringe upon Gulton's patents. This led to Transmatic's filing of this lawsuit seeking a declaration that the '875 patent was invalid and not infringed by Transmatic's lighting fixtures.[3]

After considerable discovery, Transmatic moved the district court to enter summary judgment in its favor declaring the '875 patent invalid. Transmatic argued that the '875 constituted double patenting of the later filed but earlier issued '380 patent.[4]

---

**3.** The complaint also sought a declaration that another patent held by Gulton and Patent License, No. 3,211,904 was invalid and not infringed but dispute over that patent was resolved below and is not at issue on appeal.

**4.** The date of filing of the patent applications is irrelevant in this context since "it is the issue date and not the filing date which determines priority to patents issued to the same inventor on the same machine." *Miller v. Eagle Mfg.*

The district court agreed, entered summary judgment in Transmatic's favor and entered an order declaring the '875 patent invalid. The significance of invalidating the '875 patent stems from its longer term, as a utility patent, of seventeen years, which extends to October 1982.[5] The term of the earlier issued and unchallenged '380 patent, as a design patent, is only fourteen years, which extends only to June 1979.[6] Gulton and Patent License appeal, arguing that the '875 patent is not invalid for double patenting.[7]

## II.

We initially address appellants' argument that the rule against double patenting has no application when comparing utility and design patents. Noting the separate statutory authorizations for the two types of patents (35 U.S.C. §§ 101 & 171), they argue that applying double patenting principles in this context would run afoul of the rule of statutory construction that separate statutory enactments should be given their full effect. They further note that Congress has created four devices to protect intellectual and industrial property—copyright, trademark, design patent and utility patent. They argue that just as copyright registration of an ornamental design has been held not to bar a design patent on the identical design, Application of Yardley, 493 F.2d 1389, 1393–94 (Cust. & Pat.App.1974),[8] and

a design patent on the configuration of a bottle has been held not to bar trademark registration of the same bottle, Application of Mogen David Wine Corp., 328 F.2d 925, 51 CCPA 1260 (1964), so should a design patent be held not to bar a utility patent on the identical invention.[9] In sum, they contend the four Congressionally created protections are mutually exclusive so that double patenting would apply only when comparing two utility patents or two design patents.

This argument is not insubstantial. There is some support for this position in Gross v. Norris, 18 F.2d 418, 420 (D.Md. 1927), aff'd in part, rev'd in part, on other grounds, 26 F.2d 898 (4th Cir. 1928). The argument has been expressly rejected, however, by the Court of Customs and Patent Appeals. Application of Thorington, 418 F.2d 528, 535–37, 57 CCPA 759 (1969), cert. den. 397 U.S. 1038, 90 S.Ct. 1356, 25 L.Ed.2d 649 (1970), citing cases.[10] We elect to follow the CCPA.

The CCPA conceded in Thorington that there is no statutory basis for applying double patenting principles in the design vs. utility context, as there is when comparing utility patents or design patents.[11] Rather, the rule in this context is based upon a judicially recognized doctrine that a holder of a patent may not extend the term of his patent beyond that permitted by law. We

Co., 151 U.S. 186, 197, 14 S.Ct. 310, 314, 38 L.Ed. 121 (1894).

5. See 35 U.S.C. § 154.

6. See 35 U.S.C. § 173.

7. Invalidity for double patenting is the only issue presently before this court. Other grounds for invalidity and the counterclaim for infringement are left for the district court to consider on remand. In light of the recent expiration of the '380 patent and the already lengthy course of proceedings, we urge the district court to rule on the remaining issues as expeditiously as possible. Any further appeals will be expedited by this court upon proper notice to the clerk.

8. See also Mazer v. Stein, 347 U.S. 201, 217, 74 S.Ct. 460, 98 L.Ed. 630 (1954) (patentability not a bar to copyright registration).

9. Appellants, of course, do not concede that their design and utility patents are for the identical invention.

10. Thorington was expressly followed by the CCPA in Application of Swett, 451 F.2d 631, 635, 59 CCPA 726 (1971), and was implicitly followed by the seventh circuit in Ropat Corp. v. McGraw-Edison Co., 535 F.2d 378, 380–81 (7th Cir. 1976).

11. The statutory basis for the rule in the utility vs. utility or design vs. design context stems from a construction of 35 U.S.C. § 101 ("may obtain a [utility] patent") and § 171 ("may obtain a [design] patent"). 418 F.2d at 536.

**910**

accept this reasoning and hold that the rule against double patenting applies in the utility vs. design context.[12]

### III.

■■■ Having decided that double patenting applies to this case, its application is no easy task. The judicially created rule against double patenting is of long standing. *See Miller v. Eagle Mfg. Co.*, 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed.2d 121 (1894), *citing cases.* But the issue almost always arises in cases involving either two utility patents or, less frequently, two designs patents.[13] One recent case involving utility and design patents is *Ropat Corp. v. McGraw-Edison Co.*, 535 F.2d 378 (7th Cir. 1976), wherein the court stated:

> The patent laws, of course, provide that a design patent and a utility patent may well be issued on the same construction. See 35 U.S.C. §§ 101 (utility), 171 (design). However, each such patent must claim a separate, distinct patentable invention. *In re Barber*, 81 F.2d 231 [23 CCPA 834] (Cust. & Pat.App.1936).
>
> In order to determine whether the "same invention" is claimed in two patents, their claims must be compared to determine whether they define the same subject matter. *Application of Vogel*, 422 F.2d 438, 441, 57 C.C.P.A. 920 (1970). And when the double patenting situation involves a design patent and a utility patent, we recognize that it is "not easy

to compare utility word claims with design picture claims in determining if the 'same invention' is being claimed." *Application of Swett*, 451 F.2d 631, 635, 59 C.C.P.A. 726 (1971). In comparing their claims, the mere use of the same design claimed in the design patent as the vehicle for describing the utility claimed in the utility patent is not dispositive. *Anchor Hocking Corp. v. Eyelet Specialty Company*, 377 F.Supp. 98, 101 (D.Del. 1974); *Appel v. Lilling*, 60 F.Supp. 749 (S.D.N.Y.1945).

The law of double patenting in the precise situation where a design patent and a utility patent are involved is plagued by a dearth of case law. A review of the cases which do exist reveals various "tests" for determining whether a design patent and a utility patent claim the "same invention." We believe the best formulation of the applicable standard in this situation is that set forth in such decisions as *In re Hargraves*, 53 F.2d 900 [19 CCPA 784] (Cust. & Pat.App. 1931), and *Application of DuBois*, 262 F.2d 88, 46 C.C.P.A. 744 (1958). Those cases state that double patenting exists if the feature in which the novel esthetic effect resides is the identical feature which produces the novel function so that a structure embodying the mechanical invention would of necessity embody the design, and vice versa. See also *In re Barber, supra*, 81 F.2d at 232; *In re Phe-*

---

**12.** If we wrote on a clean slate, we might not ultimately agree with appellants' position but we would give it more credence than did the CCPA in *Thorington.* We feel constrained, however, to follow the CCPA's holding due to the unique position of that court in the overall scheme of patent law. Generally speaking, the CCPA reviews the decisions of the Patent Office's Board of Appeals relative to the issuance of patents. *See* 35 U.S.C. §§ 134 & 141. So long as the CCPA denies the issuance of a design patent based upon double patenting of a prior utility patent, and vice versa, the second patent should never issue if full disclosure is made to the Patent Office and the CCPA and if the second patent is susceptible to a double patenting charge. Thus, if we were to hold

that double patenting does not apply when comparing design and utility patents, we would encourage less than full disclosure before the Patent Office and CCPA. This could yield the anomalous result of our sanctioning a patent issued only because of deception. We choose to avoid this unseemly confrontation with the CCPA. We leave to the Supreme Court any eventual holding that double patenting does not apply in this context.

**13.** Our research has disclosed no sixth circuit cases or Supreme Court cases comparing utility and design patents. *Cf. Preformed Line Products Co. v. Fanner Mfg. Co.*, 328 F.2d 265 (6th Cir.), *cert. den.* 379 U.S. 846, 85 S.Ct. 56, 13 L.Ed.2d 51 (1964) (two utility patents).

*lan*, 205 F.2d 183, 184, 40 C.C.P.A. 1023 (1953).

535 F.2d at 381–82 (footnotes omitted).[14]

While the court in *Ropat* reached a different result than we do today, we agree with the above principles and adopt them as governing in the instant case.

The '875 patent has no single feature but rather a combination of features which produce its novel function. The question for decision thus becomes: is the feature in which the novel aesthetic effect resides in the '380 patent identical to the features which produce the novel function in the '875 patent so that a structure embodying the mechanical invention would of necessity embody the design, and vice versa? And since a patent is measured by its claims, *see Scharmer v. Carrollton Mfg. Co.*, 525 F.2d 95, 101 (6th Cir. 1975), the question could alternatively be phrased: would a device embodying the claims of the '875 patent necessarily embody the claim of the '380 patent, and vice versa? We think the answer to both questions is "no."

The critical essence of the subject of a design patent is its distinctive appearance. It is "the effect upon the eye" which controls. *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 526, 20 L.Ed. 731 (1871); *Thabet Mfg. Co. v. Kool Vent Metal Awning Corp.*, 226 F.2d 207, 212 (6th Cir. 1955). A design patent can be based only upon visible characteristics; it cannot be based upon elements which are concealed during normal use. *Application of Cornwall*, 230 F.2d 457, 459, 43 CCPA 824 (1956). The appearance of the '380 patent is best set forth in the figures reproduced above, *ante* at p. 908, but it can be verbally described as follows: two similarly sized rectangular lens panels at right angles to one another, the lower lens in a horizontal plane and the upper lens in a vertical plane, each lens connected by a concave display panel which is larger than either lens panel and which has slots in which advertising may be placed.[15]

This same appearance would seem to necessarily result from a lighting fixture which embodied the claims of the '875 patent. Claim 1 of the '875 patent provides, in part: "a cornice type lighting fixture comprising a light source housing, a light transmitting panel, . . . said panel including a pair of lens sections disposed in approximately right angular and spaced relation . . ., a . . . display section intermediate said lens sections . . ., said display section being of an area which is substantially greater than the area of either of said lens sections, and means on said display section for detachably mounting a display thereover . . ." Claim 2 of the '875 patent reads: "The fixture of claim 1 wherein said display section is of arcuate configuration with said display mounting means arranged along opposite margins thereof for retention of a display against the outer surface of said display section in arcuately conforming relation." We think *these portions* of the '875 patent claims define the same thing that is defined in the '380 patent claim, and vice versa.

But the '875 patent has additional claims, concerning the location of the light source, the reflective (specular) backing, the translucent display panel and the like, which are not claimed in the '380 patent and which would not necessarily be embodied in the device disclosed in the '380 patent. In other words, a device embodying the claims of the '875 patent might necessarily embody the claim of the '380 patent, but *not* vice versa. A lighting fixture which embodied the claims of the '875 patent would look like the lighting fixture claimed in the '380 patent, but a lighting fixture which looks like that claimed in the '380 patent would of necessity embody only some, not all, of the claims of the '875 patent.

Concededly, Figure 3 of the '875 patent, *ante* at p. 908, and Figure 2 of the '380 patent, *ante* at p. 907, but for the patent

---

**14.** Footnote 5, omitted from the quoted text, notes several variant "tests" for double patenting in the design vs. utility situation.

**15.** Being a design patent, the only claim of the '380 patent is its "ornamental design . . . as shown and described."

reference numerals in the former, are mirror images of each other.[16] But, as stated earlier, "the mere use of the same design claimed in the design patent as the vehicle for describing the utility claimed in the utility patent is not dispositive." *Ropat, supra,* 535 F.2d at 381. Similarly, the mere use of the same figure depicted in the utility patent as the vehicle for depicting the design claimed in the design patent is not dispositive.

The principal error in the district court's analysis was attributing more to the design patent than it actually did, or could, claim. All that can be claimed in a design patent is appearance, so the '380 patent could only claim the outer shell of the fixture depicted in Figure 2—*viz.,* the lens panels and display section. Indeed, the '380 patent specifications state: "The dominant features of my design reside in the portions shown in full lines." The interior portions of the fixture in Figure 2, including the lighting source (and its location), the backing, and the means for attaching the lens panels to the housing, are shown in dotted lines.[17] They simply were not and could not be a part of the claim of the '380 patent. The district court erred in so considering them. *See* 442 F.Supp. at 914.

The district court reasoned in the alternative that even if all of Figure 2 were not claimed in the '380 patent it would be so treated if "the balance of the illustration aside from the lens panel is so obvious that it is implied in any event." *Id.* at 915. We agree that a design patent could be treated as claiming items necessarily implied even if not expressly claimed, but we disagree that such occurred here. We realize that since the '380 patent was titled "lighting fixture," "it readily appears that a lighting source was required." *Id.* at 916. But nothing is readily apparent about the *location* of the lighting source or the type of bulb to be used.[18] And we disagree that "it readily appears . . . that the fixture would have a back which would be a reflective surface." *Id.* It might seem more likely that such a backing would be reflective but this can hardly be said to be necessarily implied from the mere design. It could well be the case that some might think a reflective backing produced a too harsh lighting effect. The means for attaching the lens panels to the housing are also not necessarily implied from the depiction of the lens panels alone. Nor is the peculiar shape of the backing noted in the '875 patent necessarily implied merely from the lens panels alone.[19] Finally, it is

16. The appendix to the district court's opinion, 442 F.Supp. at 919, is an altered version of Figure 3 of the '875 patent and Figure 2 of the '380 patent. Unfortunately, the district court did not disclose the fact that the drawings were slightly altered. Transmatic's brief to this court has reproduced the appendix to the district court's opinion, but with a proper disclosure that it was altered. Appellee's Brief, at 4–5. The patent reference numerals have been removed from Figure 3 of the '875 patent and Claim 1 of the '875 patent has been broken down into separately numbered clauses which correlate to the numerals which have been added to each figure.

17. Dotted lines are used in patent drawings to show immaterial parts or the environment of the claimed invention. *Application of Blum,* 374 F.2d 904, 907 & n. 1, 54 CCPA 1231 (1967); *Application of Wise,* 340 F.2d 982, 983–84, 52 CCPA 936 (1965).

18. The importance of the location of the lighting source (*viz.,* "generally remote from" one of the lens panels) to the '875 patent is demon-

strated by the fact that the Patent Office Examiner rejected Claim 1 of the patent (as encompassed in Claim 4 of the patent application) as unpatentable until the applicant added, *inter alia,* the words "one of said lens sections being at least generally remove from said source." Appendix, at 49–55. While appellants may have overstated their case in asserting that the light source location was the "essential feature" of the '875 patent, it is correct to say it was an important feature.

19. While the peculiar shape of the backing is not expressly claimed in the '875 patent claims, it is suggested in the last clause of Claim 1— "said housing including light reflective inner surface portions arranged to direct light from said source at least to said display section and remote lens section." Moreover, the shape of the backing is shown in Figure 3 and the claims of a patent are to be read in light of the specifications and drawings. *Tillotson Mfg. v. Textron, Inc.,* 337 F.2d 833, 838 (6th Cir. 1964).

not necessarily implied from the '380 patent that its display section would be translucent, as is expressly claimed in Claim 1 of the '875 patent; it could be transparent or opaque.[20]

It is apparent that both patents at issue in this cause relate to the same general purpose, viz., illumination of mass transit coaches. It is equally apparent that it was contemplated that the lens panels and display section covered by the '380 patent would be used with the overall fixture covered by the '875 patent. But they are not for the "same invention."[21] It is well settled that "a design patent and a utility patent may well be issued on the same construction." *Ropat, supra*, 535 F.2d at 381; *Dubois, supra*, 262 F.2d at 90. The claims of the '875 patent and the '380 patent do not "cross-read," as this circuit requires to demonstrate double patenting. *Preformed Line Products Co. v. Fanner Mfg. Co.*, 328 F.2d 265, 269 (6th Cir.), cert. den. 379 U.S. 846, 85 S.Ct. 56, 13 L.Ed.2d 51 (1964).[22]

There is a heavy burden of proof on one seeking to show double patenting, *TSC Industries, Inc. v. International Harvester Co.*, 406 F.2d 53, 57 (7th Cir.

1968), *citing Mumm v. Jacob E. Decker & Sons*, 301 U.S. 168, 171, 57 S.Ct. 675, 81 L.Ed. 983 (1937), which burden Transmatic has not carried. Double patenting is rare in the context of utility vs. design patents. *Application of Swett*, 451 F.2d 631, 635, 59 CCPA 726 (1971). This is not such a case. *Cf. Plantronics, Inc. v. Roanwell Corp.*, 403 F.Supp. 138, 155 (S.D.N.Y.1975), aff'd per curiam, 535 F.2d 1397 (2d Cir.), cert. den. 429 U.S. 1004, 97 S.Ct. 538, 50 L.Ed.2d 617 (1976).

We hold that the '875 patent is not invalid for double patenting of the '380 patent.[23]

The judgment of the district court is reversed and the cause remanded (see note 7, *supra*) for further proceedings consistent with this opinion.

---

20. It would seem more likely that the display section transmit some light in order to illuminate the advertisements placed thereupon, but that only narrows the choice to either transparent or translucent. Moreover, it could well be that the case that such rear illumination was considered either ineffective or not aesthetically pleasing, making an opaque surface preferred.

21. Nor is the later issued utility patent an "obvious variation" of the design patent. *Application of Driscoll*, 562 F.2d 1245, 1251 (CCPA 1977); *Application of Vogel*, 422 F.2d 438, 440–41, 57 CCPA 920 (1970); *Application of Thorington*, 418 F.2d 528, 534, 57 CCPA 759 (1969).

22. While *Preformed Line Products* was a utility vs. utility double patenting case, its principles are equally applicable here on this point. The district court erred in relying on cases from other circuits which do not require that claims cross-read in order to establish double patenting. 422 F.Supp. at 916, *citing Tidewater Patent Development Co. v. Kitchen*, 371 F.2d 1004

(4th Cir. 1966), cert. den. 389 U.S. 821, 88 S.Ct. 46, 19 L.Ed.2d 74 (1967) and *Application of Zickendraht*, 319 F.2d 225, 50 CCPA 1529 (1963), both of which were utility vs. utility double patenting cases. *Compare Application of Stanley*, 214 F.2d 151, 155, 41 CCPA 956 (1954) claims of patents must cross-read to establish double patenting).

"The district courts in this circuit are, of course, bound by pertinent decisions of this Court even if they find what they consider more persuasive authority in other circuits." *Timmreck v. United States*, 577 F.2d 372, 374 n.6 (6th Cir. 1978), *rev'd on other grounds ——* U.S. ——, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979).

23. The ultimate question of patent validity is one of law, *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 155, 71 S.Ct. 127, 95 L.Ed. 162 (1950) (Douglas, J., concurring), so disposition of this issue by this court is appropriate in light of the undisputed facts relative to the double patenting issue.